PUBLIC SERVICE CO. v. SONAGERRA.

No. 34962.   Dec. 23, 1952.

Rehearing Denied Feb. 17, 1953.

*253 P. 2d 169.*

Doerner, Rinehart & Stewart, Harry D. Moreland and Jack E. Campbell, Tulsa, for plaintiffs in error.

David J. Morrison, Oklahoma City, and C. B. Perdue, Wilburton, for defendant in error.

PER CURIAM. This action was brought by Maggie Sonagerra, as plaintiff, against Public Service Company, a corporation, as defendant, for damages for injuries received by the plaintiff when she walked into the service lines of the defendant at night in her back yard. The parties will be referred to as they appear in the trial court.

The undisputed evidence discloses that several years before the injury complained of, the defendant ran two service lines from a post in the alley near the southeast corner of plaintiff's lot at an angle across the back part of plaintiff's lot to the Cuzalinas, who lived in the house just west of plaintiff's house. Plaintiff had a clothesline in her back yard. Defendant's service lines ran diagonally across the back part of plaintiff's lot to the Cuzalina house. They had a clearance of over ten feet and crossed above plaintiff's clothesline at about a 45° angle. As a result of an unprecedented ice and sleet storm in the area the weight of the ice on defendant's service lines which ran to the Cuzalina house caused the lines to sag until they rested on plaintiff's clothesline. These service lines at the spot where they were resting on plaintiff's clothesline were about chin high. There was also a telephone line across plaintiff's back yard running from the same post in the alley to the Cuzalina house. This line had a lower clearance than defendant's service lines. As a result of the storm this telephone line had sagged until it was flat on the ground.

Defendant's evidence does not disclose just when it restored these particular service lines to their former condition. Its evidence is that the ice and sleet storm paralyzed its electric system in the whole area and that it was able to repair and restore its lines and service within the area in from ten to twelve days after the storm.

Plaintiff testified that these service lines were not repaired for twelve to fourteen days after the storm. That it

had been her common practice for more than 30 years to go to. the back of her property from five to nine times a day; that there was a barn on the back of the lot; that she kept her table scraps for her son who had a pig and every day she went out to the barn to take the scraps to the pig. There was a path from her house to this barn where the pig was. That she had walked two or three times a day from her house to the barn after the ice storm until the night of the accident which is the basis of this action. That she was careful in going out to the back of her property. That when she took the garbage to the pig the night she was injured, the lines were sagging and were lodged on her clothesline and that she had to stoop down to go under these wires in order to take the garbage to the pig. That at night she used the telephone wire which was on the ground as a guide to tell her where the service lines of defendant were. That on this particular night, with her hands full of garbage, she lost her way by failing to locate the telephone line on the ground which she used as a guide and walked into the service lines of defendant and fell and was injured. That she was injured the night of February 5th, but said nothing about it to the defendant until the latter part of June.

This ice storm commenced on January 24th and lasted several days. Plaintiff complained to defendant about the service lines being down in her back yard four or five days before night of the injury.

The defendant contends (1) that the evidence does not disclose any negligence on its part in the construction and maintenance of these service lines before the storm; (2) that the evidence does not disclose any negligence on its part in the repair of these service lines after the storm; (3) that an unprecedented ice and sleet storm, which amounted to an act of God, was the sole cause of the sag in defendant's service lines and thus the sole cause of the injury to plaintiff.

The evidence shows that defendant's service lines which crossed plaintiff's lot and served the Cuzalina house were 194 feet in length; that there was no support for these service lines between the post in the alley back of plaintiff's lot and the Cuzalina house.

We have made a careful examination of all of the evidence in the record.

This evidence shows that defendant complied with the provisions of the National Electrical Code and the orders of the Corporation Commission in running these service lines to the Cuzalina house. That there is no order or rule of any kind providing that service lines shall be of any certain length. That the safety factor involved in the length of a service line depends on the nature of the connections. That if a service line is run from a post of the defendant company to a substantial building where it can be securely fastened, it may run as far as 250 feet in length. In fact, service lines are all the way from 50 feet to 250 feet in length. The service lines to the Cuzalina house, which passed over plaintiff's lot, were 194 feet long. It is natural that a service line 194 feet long will sag more than one 100 feet long. But these particular service lines had a clearance in · excess of ten feet.

There is no evidence in the record supporting the contention of plaintiff that extending these service lines for a distance of 194 feet made them unsafe. One of the defendant's employees did testify that he did not like to run a service line longer than 160 feet. However, he did not say that it was unwise or dangerous to run such a line 194 feet or that there was any rule of the defendant or regulation of the National Electrical Code or order of the Corporation Commission against running service lines 194 feet. This testimony is wholly insufficient to create a conflict in the evidence with regard to the safety with which these service lines to the Cuzalina house were constructed.

The parties stipulated that the ice and sleet storm was an unprecedented

storm. Whether an ice storm constitutes an act of God is usually a question of fact for the jury. However, in this case, it was taken from the jury as a result of this stipulation. This stipulation constitutes this storm an act of God as a matter of law. Then, too, plaintiff testified that it was the most severe ice and sleet storm that had occurred in Wilburton during the 49 years that she had lived there.

An act of God is such an unprecedented storm or flood as will excuse from liability, provided it is the approximate cause of the injury as well as the sole cause of the injury. However, the defendant is liable if the injury is caused by an act of God, in connection with which the negligence of the defendant is a concurring cause, and the injury would not have occurred except for such negligence.

In City of Purcell v. Stubblefield, 41 Okla. 562, 139 P. 290, we said:

"Even if it were admitted that the wind was unprecedented on that day, and that there had never been such a wind as that before, yet, if the accident was not due entirely to this wind, but the strong wind in connection with the negligence of the defendant operated as an efficient and contributory concurrent cause, then the defendant would still be liable. The definition of an act of God, as given by this court, is 'an act of God, such as an unprecedented rainfall and resulting flood which will excuse from liability, must not only be the proximate cause of the loss, but it must be the sole cause. If, however, the injury is caused by an act of God, commingled with the negligence of the defendant, as an efficient and contributory concurrent cause, and the injury would not have occurred except for such negligence, the defendant will be liable.' M. K. & T. R. Co. v. Johnson, 34 Okla. 582, 126 P. 567. Applying this definition to the facts of this case, in order for this defense to avail the defendant city, it must be found that the wind that day was of extraordinary and unprecedented velocity, and that this wind was the sole cause of the sign falling and the resulting injury."

See, also, Gulf Oil Corporation v. Lemmons, 198 Okla. 596, 181 P. 2d 568; Chicago, R. I. & P. Ry. Co. v. McKone, 36 Okla. 41, 127 P. 488.

As the defendant was not negligent in the construction and maintenance of its service lines to the Cuzalina house prior to the storm, the unprecedented ice and sleet storm was the sole cause of the sagging of these service lines. The defendant was not liable for the sagging conditions of these service lines.

Was the defendant negligent in repairing these service lines after the storm? The evidence discloses that the storm began on the 24th day of January and lasted for several days. The plaintiff was injured on the 5th day of February. She notified defendant of the sagging condition of these service lines four or five days before she was injured. When she notified defendant of the condition of its service lines across the back of her property she also told the defendant that she was uneasy because she was afraid of these low sagging lines. She asked the defendant to repair them. The defendant received similar calls or requests from hundreds of other people in Wilburton and the surrounding area. The lines continued to carry electricity to the Cuzalina house after the storm. They were insulated and were no more hazardous because they carried electricity than the lamp cords in plaintiff's house. Plaintiff says that defendant did not advise her of the harmless nature of these lines.

The only evidence in the record with regard to the manner and method by which these service lines were repaired is that of defendant's witnesses. All of them testified that this unprecedented ice and sleet storm was so severe that it sagged and broke defendant's cross country transmission lines; its high-voltage distribution lines; its low-voltage distribution lines; and its service lines; that the storm covered an area of about 85 miles by 115 miles; that one of the defendant's power stations in the

area was flattened by the storm; that in restoring its electric system following the storm defendant first restored the high-voltage cross-county transmission lines because of the extreme hazard they created while down and in order to restore power over the stricken area so that the lines still functioning could serve their facilities and that those restored could begin serving their facilities at once; that defendant next restored its high-voltage primary distribution lines because of the hazard they created while down and so that municipal waterworks, hospitals, schools, etc., could have immediate service; that defendant next restored the secondary or low-voltage distribution lines and broken service lines so that service could be restored to homes and other users; and that defendant then restored those service lines that were sagging but still giving service, among which were the lines to the Cuzalina house; that these restorations of service were all in the nature of emergencies which were the direct result of the unprecedented ice and sleet storm and not through the negligence of defendant.

The evidence discloses that defendant obtained every qualified repair crew it could find, which crews worked at the job long hours, sometimes as much as twenty-four hours a day, in order to get its wires and service restored with the least possible delay.

It is plaintiff's contention that defendant was negligent in that plaintiff notified defendant of the condition of its service lines across her back yard and requested the defendant to repair them four or five days before she was injured as a result of walking into said lines. Defendant's witnesses, on cross-examination, testified that defendant could have restored these sagging service lines across plaintiff's lot in a few hours if it had worked on said lines without taking into consideration its larger and more important job of restoring its electric system in the area and getting it back into operation in the

manner in which it did, and which was the accepted method in the industry in restoring electric service after such an unprecedented storm.

Even though the defendant's method of restoring its electric system in the area after the storm was in accord with the accepted method in the industry and was the most humane approach to its problem from the standpoint of the health and safety of all of the people involved, it resulted in the failure to repair the service lines across plaintiff's lot for some ten days after the storm commenced and some four or five days after plaintiff notified defendant of the condition of its service lines across plaintiff's property before she was injured. Defendant does not cite any case in its brief, and we have found none in our search, holding that an electric service company is not negligent as a matter of law regardless of the situation confronting the electric service company when four or five days pass after notification of defect in service lines before injury.

Defendant was required to use that care, skill, and diligence that would ordinarily be used by a careful and prudent person in the transmission and distribution of electric energy in the construction and maintenance of its lines, poles and other equipment. Whether or not defendant exercised such care, skill and diligence in the repair and restoration of its service lines to the Cuzalina house, which this unprecedented storm caused to sag as they crossed plaintiff's property, is a question of fact for the jury. This question is so well settled that citations of authority are not necessary.

The verdict of the jury in this case places a heavy burden on an electric service company in face of such a severe storm. However, regardless of how we may feel with regard to the diligence of the defendant in restoring its lines and service in the light of the situation with which it was confronted, we cannot say as a matter of law that the

defendant used that care, skill and diligence that would ordinarily be used by a careful and prudent person in the manner in which it restored its electric service lines across plaintiff's property and which caused her injury.

The court, in instruction No. 11, fairly presented this issue to the jury and the jury found for the plaintiff.

Where there is competent evidence reasonably tending to support the verdict of a properly instructed jury, the judgment based thereon will not be disturbed on appeal.

In Missouri Motor Distributing Co. v. Barker, 170 Okla. 183, 39 P. 2d 544, we said:

"A reviewing court must assume, where the verdict is for plaintiff, that the jury believed the plaintiff's evidence."

In Elam v. Loyd, 201 Okla. 222, 204 P. 2d 280, we said:

"We have often said that questions of negligence and of contributory negligence are questions of fact for the jury and the court's judgment thereon will not be disturbed on appeal where there is any competent evidence reasonably tending to support the same. Bunch v. Perkins, 198 Okla. 517, 180 P. 2d 664; Muzny v. Holland, 193 Okla. 695, 146 P. 2d 292."

In Chapman v. Koenig, 205 Okla. 402, 238 P. 2d 357, we said:

"* * * This court has never deviated from the rule that the verdict of a jury will not be disturbed on appeal for insufficiency of evidence if there is any competent evidence reasonably tending to support it."

This rule of law is so well established in this state that further authority in support of it is unnecessary.

It is true, as defendant says in his brief, plaintiff was aware of the condition of defendant's service lines running across her property to the Cuzalina house. She notified defendant of their condition. She afterwards used the path passing by and under these service lines both day and night for four or five days prior to the night of her injury. However, Art. 23, §6, of the Oklahoma Constitution, provides that, "The defense of contributory negligence or of assumption of risk shall, in all cases whatsoever, be a question of fact, and shall at all times, be left to the jury," and the jury upon the evidence brought in a verdict for plaintiff. This settles in question of contributory negligence and assumption of risk by the plaintiff.

Defendant contends that the trial court erred in refusing to give instructions requested by defendant and in giving certain instructions. We have given careful consideration to the instructions given by the court. These instructions taken as a whole fairly presented all of the issues in the case to the jury and no error was committed by the court, either in the instructions given or in the instructions refused.

The judgment of the trial court is affirmed.

This Court acknowledges the services of Attorneys John Rogers, Horace Ballaine and Morris L. Bradford, who as Special Masters aided in the preparation of this opinion. These attorneys were recommended by the Oklahoma Bar Association, approved by the Judicial Council, and appointed by the Court.

WELCH, CORN, DAVISON, JOHNSON, O'NEAL, and BINGAMAN, JJ., concur. HALLEY, V. C. J., and GIBSON, J., dissent.