**CITY OF ENID, Oklahoma, a Municipal Corporation, Plaintiff in Error,**

**v.**

**Clyde W. REESER, Defendant in Error.
No. 38844.**

Supreme Court of Oklahoma.
Sept. 13, 1960.

408

McKnight & Gasaway, Enid, for plaintiff in error.

Otjen, Carter, Huddleston & Otjen, Enid, for defendant in error.

DAVISON, Chief Justice.

This action was instituted by Clyde W. Reeser against the City of Enid, Oklahoma, a municipal corporation, to recover for the alleged destruction of an airplane.

This is the second time this suit has been in this court. In City of Enid v. Reeser, Okl., 330 P.2d 198, we affirmed action of the lower court in sustaining plaintiff's motion for new trial after trial resulting in verdict for the defendant.

Plaintiff alleged in his amended petition that under a rental agreement with defendant, he stored his Piper Tri-Pacer airplane in the municipal hangar of defendant and that while in storage on April 8, 1956, the airplane was destroyed, whereby plaintiff was damaged in the sum of $4,259.

Defendant admitted in its answer that it rents space in the hangar and alleged that it used ordinary care for the protection of the airplane and that the sole and proximate cause of the damage to the airplane was an Act of God consisting of a sudden, extraordinary and unprecedented wind.

Upon trial the jury returned a verdict for plaintiff in the above amount and the court rendered judgment on the verdict.

Defendant has perfected this appeal from the verdict and judgment.

Two other parties filed similar separate actions against the defendant for damages to their airplanes. All the suits were consolidated for trial and these parties also recovered judgments against the defendant for their respective damages. It was stipulated that the decision in the present appeal would govern final disposition of all of the suits and judgments.

Defendant contends the verdict is not sustained by sufficient evidence and the trial court erred in refusing to grant defendant's motion for a directed verdict.

It was stipulated and the jury was so advised that:

1. The suit was based upon a contract of bailment for hire.

2. The airplane was owned by plaintiff.

3. The airplane was stored on April 8, 1956, in defendant's hangar in space rented therein and the rent was paid.

4. The plane was damaged and the claim filed for the damage was denied by defendant.

The plaintiff introduced evidence as to renting space in the hangar; that the plane was moved in and out of the hangar by city employees; the condition and value of the plane as equipped when stored in the

hangar on April 8, 1956, and its damaged condition and salvage value the next morning; that plaintiff's damage was $4,259.

The above facts and evidence established a prima facie case in favor of plaintiff. In Schulze v. Allison, 204 Okl. 147, 227 P.2d 658, 660, involving bailment for hire of an automobile, we said:

"When the fact of bailment and the return of the bailed property in a wrecked condition was admitted, the burden then shifted to the defendants to show a cause for the wreck which did not result from their failure to use ordinary care. Wheeler v. Packard Oklahoma Motor Co., 169 Okl. 272, 38 P.2d 943; Agricultural Ins. Co. v. Constantine, 144 Ohio St. 275, 58 N.E. 2d 658. And in determining the question of failure to use ordinary care arising from bailee's failure to redeliver, their explanation of the circumstances surrounding such failure and any evidence offered to rebut such explanation, all should be considered and weighed by the trier of the facts."

Under the facts and this statement of law the burden of proof to show defendant exercised ordinary care was upon the defendant. The burden of proving the affirmative defense of an Act of God was also upon the defendant. Oklahoma City v. Tarkington, 178 Okl. 430, 63 P.2d 689.

The specification of error presented by defendant requires examination of the evidence. The defendant's hangar was a structure 81 feet by 100 feet with iron or steel frame, covered with metal sheets. The front end faced in a northwesterly direction. Across the front were vertical sectional doors. These doors were 14½ feet high and suspended on rollers and a track. This track extended across the front and around the inside corners and back along the inside walls. The rollers and/or track were not in good condition and it was extremely difficult to open and close the doors. This condition had been reported to defendant. Similar doors extended across the rear of the hangar. These rear doors were rarely opened.

The airport was under the charge of a city airport manager and at least two attendants. The practice was to leave the front doors open or partially open during the day for the admission and removal of airplanes and to close them at night. If an airplane was expected in later at night the doors were left open and then closed after it had been admitted to the hanger. It was the practice to close the doors when a storm was imminent.

There was evidence that April was a time in which to expect storms. About 8:30 p. m. on April 8, 1956, a Central Airlines passenger plane landed and was grounded on account of bad weather. At 9:30 p. m. a weather observation by a Central Airlines employee revealed lightning in clouds and clouds to ground to the northwest and west of the airport with wind to 33 knots. The city attendant was on duty during these times. About 9:40 p. m. the attendant left the airport to deliver the crew of the Central Airlines plane to the hotel in Enid. This was not a part of his duties. The front doors of the hangar were left open about 50 feet. The wind and storm struck the airport about 10:20 p. m. and was in progress when the attendant returned and took refuge in the administration building. The highest wind velocity observed at or about the time the storm struck was 70 miles per hour and from a northwesterly direction.

After the storm it was found that a number of the rear doors of the hangar were blown out, the metal roof covering was gone, planes in the hangar were buffeted about and plaintiff's plane was standing on its nose in a corner of the hangar. There was evidence that planes in another hangar with doors open suffered damage. The evidence further disclosed that planes in a hangar where the doors were closed were not damaged. There was also evidence of prior and subsequent winds of 70 miles per hour and greater, with and without damage. Other evidence was mainly cumulative.

**410**

In determining liability, if any, of the defendant under the evidence, another element or rule of law must necessarily be considered. In Public Service Co. v. Sonagerra, 208 Okl. 95, 253 P.2d 169, 170, we stated in the second syllabus by the court as follows:

"If an injury is caused by an Act of God, commingled with the negligence of the defendant, as an efficient and contributory concurrent cause, and the injury would not have occurred except for such negligence, the defendant will be liable."

We think that the evidence presents a factual situation on which reasonable minds might differ in arriving at a conclusion as to liability. It is our opinion that the trial court properly denied defendant's motion for a directed verdict. In Dunham v. Jackson, Okl., 349 P.2d 737, we stated in the first and second syllabus by the court as follows:

"In passing upon a demurrer to the evidence or a motion for a directed verdict, the trial court should consider as true all the evidence favorable to the party against whom the demurrer or motion is directed, together with all inferences reasonably to be drawn therefrom, and should disregard all conflicting evidence favorable to the demurrant or movant."

"In trials by jury, it is only where the facts, although undisputed, are such that all reasonable men must draw the same conclusion from them that the court is authorized to direct a verdict."

From our examination of the entire record we conclude that there is some evidence reasonably tending to support the judgment. The jury determined the defendant was liable. A jury verdict and judgment based thereon will not be disturbed on appeal if there is any evidence reasonably tending to sustain the judgment. State of Oklahoma ex rel. State Insurance Fund v. Bone, Okl., 344 P.2d 562.

Affirmed.