SKY AVIATION CORPORATION, a Wyoming Corporation, Appellant
(Plaintiff below),

v.

William F. COLT, Appellee
(Defendant below).

No. 3785.

Supreme Court of Wyoming.

Oct. 12, 1970.

302

Robert A. Burgess, of Winter & Burgess, Casper, for appellant.

Nancy G. Hinckley, of McKinney & Hinckley, Basin, for appellee.

Before GRAY, C. J., and McINTYRE, PARKER, and McEWAN, JJ.

Mr. Justice McEWAN delivered the opinion of the court.

On May 3, 1964, defendant, a licensed commercial pilot, rented an airplane from plaintiff to fly from Worland, Wyoming to Casper, Wyoming and return. The trip from Worland to Casper was uneventful. There were high winds at Casper, and the defendant was cleared by the control tower to land on the ramp instead of the runway so that he would not have to taxi crosswind. The defendant landed without incident and began to taxi to the tie-down area. He had to turn somewhat so that he was slightly crosswind when the wind got under the right wing and flipped the airplane over on its back, causing considerable damage to the plane. The plaintiff filed suit against the defendant alleging that the defendant rented an airplane from the plaintiff and that the said airplane was damaged due to defendant's negligence, and that by reason thereof plaintiff suffered damages in the sum of $6,750. The defendant answered and admitted that he rented the aircraft from the plaintiff and that the aircraft was damaged, having been turned on its back by the wind while being taxied by the defendant at the Casper airport. The defendant alleged that the plane was further damaged when third parties attempted to remove it from the ramp under gusty wind conditions. Defendant further answered that the renting of the airplane to the defendant by the plaintiff was subject to the acceptance of the risks and perils of the air and acts of God over which defendant had no control.

The matter was tried to the court without a jury, and the court found that the law and facts were with the defendant and that the damages to plaintiff's aircraft were not caused by the negligence of the defendant, and it was ordered that the plaintiff take nothing by its action. The plaintiff appealed.

The plaintiff argued that the judgment entered by the trial court is contrary to and not supported by the evidence and cited specific acts of negligence on the part of the defendant: failure of duties to determine weather conditions prior to flight; to listen to in-flight weather reports; to abandon unwise flight; and improper procedure in controlling the aircraft in high winds.

The defendant argued that as a bailee for mutual benefit he was required to exercise only ordinary care and that he did exercise ordinary care, and that the damages were the result of an act of God and unavoidable accident, and not as a result of any negligence on part of defendant.

Parties agreed that the renting of aircraft to the defendant by plaintiff was a bailment, that general laws concerning bailments apply to bailments of aircraft, and that the bailee must use ordinary care in keeping and using the property. Fuchs v. Goe, 62 Wyo. 134, 163 P.2d 783.

We will first consider the defendant's defenses of unavoidable (inevitable) accident and act of God. Some authorities hold that unavoidable (inevitable) accident is synonymous with act of God. However, we have said that the act of God is a natural event, such as wind and storms, which arises from natural causes and is distinct from inevitable accident. King v. Richards-Cunningham Co., 46 Wyo. 355,

28 P.2d 492, 495. Here we are dealing with an alleged act of God. As a legal term act of God has been defined as any accident, due directly and exclusively to natural causes, without human intervention, which by no means of foresight, pains or care, reasonably to have been expected, could have been prevented. 1 C.J.S. Act of God, p. 1423.

■ The term is also used to designate the cause of an injury to person or property where such injury is due directly and exclusively to natural causes without human intervention and which could not have been prevented by the exercise of reasonable care and foresight. 65 C.J.S. Negligence § 21, p. 652.

■ In order for the rule to apply, the act of God must be the sole cause of the injury. There can be no combination of an act of God and the fault of man as the presence of one excludes the other. If defendant's negligence directly contributed to the injury so that it is reasonably certain that the force of nature alone would not have sufficed to produce the injury, defendant is liable. The ordinary force of nature such as winds which are usual at the time and place are conditions which reasonably could have been anticipated and will not relieve from liability the person guilty of the original negligent act.

There is no doubt that the wind and gusts of wind were from natural causes, but the defendant failed to show that the winds and gusts were of such unusual and extraordinary manifestation of nature that they could not have been anticipated or expected. Here the defendant testified that the tower advised him that the winds were 30 knots (34.5 mph) gusting to 40 knots (46 mph) so he actually knew that the winds were strong and gusty.

■ The defendant, relying on the defense of act of God, must prove not only the existence of the act of God but that the act was the sole proximate cause of damages about which plaintiff complains, and that he, the defendant, was free from concurrent negligent participation in the proximate cause. The defendant has the burden of proving such an affirmative defense by a preponderance of the evidence.

■ Where an action is defended on the ground that the accident was a result of an act of God it is encumbent upon the defendant to demonstrate a storm of such unusual severity as to negative failure to use due care in anticipating it.

■ While the burden of proof does not shift where the plaintiff makes out a prima facie case, the burden of going forward with the evidence shifts to the defendant.

■ The defendant failed to show that the accident was caused by an act of God and thus there was no basis upon which the trial court could have so found.

We then turn to the question of negligence.

■ As the defendant contends, the burden of proof regarding negligence is on the plaintiff-bailor. However, such negligence may be presumed. When the plaintiff-bailor proved that the airplane was delivered, in good condition, to the bailee and returned by him in a damaged state, a presumption arose that the damage was due to the defendant-bailee's fault and the defendant-bailee then had the duty to go forward with the evidence to rebut the presumption of negligence. Northeast Aviation Co. v. Rozzi, 144 Me. 47, 64 A.2d 26; Gray v. E. J. Longyear Company, 78 N.M. 161, 429 P.2d 359, 361; City of Enid v. Reeser, Okl., 355 P.2d 407, 409; Clack-Nomah Flying Club v. Sterling Aircraft, Inc., 17 Utah 2d 245, 408 P.2d 904, 905; 8 Am Jur 2d, Bailments § 314, p. 1200 and § 320, p. 1209; Annot., 17 A.L.R.2d 913, 922; and 8 C.J.S. Bailments § 50, p. 518. Unless the bailee sustains the burden of showing that the damage was due to other causes consistent with due care on his part the bailor becomes entitled to a judgment as a matter of law. Alamo Airways, Inc. v. Benum, 78 Nev. 384, 374 P.2d 684, 686. We must then consider if there was sufficient evidence to rebut the presump-

tion; i. e., did the defendant meet the burden of showing due care?

The defendant testified that about 10:00 a. m. and again at about 10:15 a. m. he checked with Federal Aviation personnel at Worland and was advised that the winds in Casper were 20 miles per hour with gusts to 30 miles per hour. It appears from his testimony that defendant was confused as to whether he was at various times advised that the wind was in knots or miles per hour. Whenever it was called to his attention for clarification he stated that the wind velocity was given to him in knots and not miles per hour. This is of some importance because a knot equals 1.150 miles per hour and thus if the winds were reported in knots the velocity in miles per hour would be greater. The records of the Weather Bureau's airport station at Casper showed that on the day of the accident the winds at Casper were as follows:

| Time | Knots | Velocity (MPH) | | Knots | (MPH) |
|---|---|---|---|---|---|
| 8:56 a. m. | 32 | (37) | Gusts to | 47 | (54) |
| 9:56 a. m. | 30 | (35) | " " | 44 | (51) |
| 10:56 a. m. | 32 | (37) | " " | 44 | (51) |
| 11:50 a. m | 34 | (39) | " " | 47 | (54) |
| 12:24 p. m. | 33 | (38) | " " | 47 | (54) |

These hourly observations are teletyped to other stations including Worland. The defendant deliberated for awhile before he took off from Worland, finally left there at about 11:00 a. m., and proceeded to Casper to pick up his wife, who had been visiting in Casper, and bring her home to Worland.

The omni stations broadcast the weather reports every 30 minutes (15 minutes past the hour and 15 minutes before the hour). The defendant did not tune to weather broadcasts while en route though the airplane was equipped with the necessary radio equipment and expert testimony revealed that a reasonably prudent pilot should do so.

Defendant testified that when he was about 10 minutes out of Casper he tuned to the Casper tower and was advised that the winds were 30 miles per hour with gusts to 40 miles per hour. Again, the defendant was apparently confused because he testified that the tower referred to the wind velocity in miles per hour but later indicated that the information given to him was in knots and not miles per hour.

He was advised from the airport control tower that he could land on the ramp instead of the runway and would thus avoid taxiing in a crosswind. At that time the tower also advised him that after he landed there would be someone on the ramp to hold down the wing as he taxied so that the wind would not turn the airplane over on its back. The defendant had landed previously at Casper when the winds were strong and had at that time utilized the "wing walker." All testimony indicated that there is some difficulty in taxiing this particular airplane in a heavy crosswind. The defendant indicated that he could handle this particular airplane in winds up to 40 miles per hour, and that he probably would not have made the trip to Casper had he known that winds were up to 40 knots; and had he known that winds were more than 40 knots he would not have landed at Casper but would have returned to Worland. The winds were calm at Worland and he had adequate fuel to return there.

One of the witnesses testified that this was too much wind for this type of airplane which was a high-winged monoplane, and that a reasonably prudent commercial pilot would not, unless it was an emergency, have made the trip or landed at Casper. All witnesses seemed to agree that this was a dangerous situation.

At about 12:20 p. m. the defendant landed on the ramp and proceeded to taxi to the tie-down area. The "line boy" was on the ramp to hold down the wing and assist the defendant in taxiing, but due to some confusion the defendant did not avail himself of this help. At 12:24 p. m. the airplane was turned on its back by the wind.

While the defendant testified that at 10:00 a. m. and again at about 10:30

a. m. he was informed at Worland that the winds at Casper were 20 knots with gusts to 30 knots and that he was informed by the Casper tower just before landing that the winds were 30 knots gusting to 40 knots, the official records of the Weather Bureau show that the winds at those times were substantially in excess of the velocities testified to by the defendant. Ordinarily a judgment will not be disturbed where evidence is conflicting, but the rule has its limitations. Steadman v. Topham, 80 Wyo. 63, 338 P.2d 820, 825. Usually the credibility of witnesses is for the trier, but when admitted physical facts and testimony are so diametrically opposed as to make valid testimony unbelievable the judgment based on such testimony will be set aside. It is difficult for us to believe that the defendant would have on three separate occasions by two or three different people been improperly advised of the wind velocities at Casper. At all three times when the defendant checked the weather the actual wind velocity was in excess of that which he said he would not have made the flight or would not have landed at Casper but returned to Worland.

The defendant knew the situation was dangerous even if the winds were of the velocity he stated were reported to him; the trip was not of an emergency nature and he could have returned to Worland where the winds were calm; he did not make use of the en route weather reporting which would have advised him of the wind velocities at Casper; and he failed to utilize the wing walker help although he had done so on a previous occasion at Casper and therefore was familiar with the procedures. When we consider all these circumstances it becomes clear that the defendant did not exercise that degree of care that the plaintiff was entitled to expect of him. The defendant wholly failed in his burden of showing that he exercised that ordinary degree of care required of a reasonable person in light of all the circumstances present at the time, and judgment should have been for the plaintiff.

Judgment must be entered for the plaintiff for another reason. The defendant stated that he would not have landed at Casper had he known the winds were in excess of 40 knots. This we must accept as his own standard of ordinary care considering all the circumstances present at the time, including his abilities and limitations of the particular aircraft. The defendant had the burden of showing that the tower had advised him that the winds were 30 knots gusting to 40 knots where the evidence shows that the velocity at the time was 33 knots with gusts to 47 knots. We must conclude that the defendant wholly failed in his burden. His own uncorroborated self-serving declaration which is contrary to admitted facts, falls far short of meeting the burden.

The defendant argued that the tower authorized him to land on the ramp and thus must have thought that it was safe to land and taxi. This argument has no merit because the tower has no way of knowing a particular pilot's capability and therefore must act only in an advisory capacity. The primary responsibility for the movement and safety of his aircraft remains with the pilot. Hueske Implement Company v. Shipley, Wyo., 445 P.2d 9; 2 C.J.S. Aerial Navigation § 19 (1970 Cum. Annual Pocket Part, p. 234, n. 82.11).

We have not considered the defendant's defense that the aircraft was further damaged by third parties when they attempted to remove the airplane from the ramp after it had been turned over by the wind. Since this matter must be remanded to the trial court for determination of the plaintiff's damages this additional defense, if appropriate, can be considered by the trial court at that time.

Reversed and remanded accordingly.