226 Cal.App.2d 238 (1964)
Adoption of BABY BOY IRBY, a Minor. LEROY R. ELLIS et al., Plaintiffs and Respondents,
v.
STATE DEPARTMENT OF SOCIAL WELFARE, Defendant and Respondent; JIMMY ANTHONY BRYANT, Intervener and Appellant.
Civ. No. 7477. 
California Court of Appeals. Fourth Dist. 
April 8, 1964.
 Henry A. Fox for Intervener and Appellant.
 Harold A. McCabe for Plaintiffs and Respondents.
 Stanley Mosk, Attorney General, Harold B. Haas, Assistant Attorney General, and Edward M. Belasco, Deputy Attorney General, for Defendant and Respondent.
 GRIFFIN, P. J.
 Appellant, Jimmy Anthony Bryant, father of the child, intervened in an adoption proceeding brought by respondents and asked that the proceeding be dismissed. The Department of Social Welfare and the adoptive parents filed an answer to the complaint in intervention and after the trial the court decided that appellant had not legitimized the child and the consent of appellant was therefore *239 not necessary to the adoption. The appellant appeals from this judgment.
 The evidence at the trial indicates that in October 1961 appellant, who was then 17, discovered that Sue, who was then 14, was pregnant with his child. They decided to go to Las Vegas and get married, but stopped in Indio where they spent the night. The next morning they called their parents and disclosed the situation to them. Both then returned to their respective homes. Appellant made an effort to discuss the situation with Sue but his attempts were rebuffed by her parents. Appellant then faked a suicide attempt in an effort to persuade Sue and her parents to go through with the marriage. He was placed in the hands of the juvenile authorities as a result of this escapade. He was placed on probation for approximately two months and then went to Texas where he lived with relatives in Dallas. He returned from Texas before the baby was born and again his efforts to communicate with Sue were unsuccessful. The trial court found that appellant offered to pay the expenses relating to the birth of the child and that he desired to make a home for the child, but that these offers were rejected. The actual date of the child's birth and Sue's whereabouts at the time were concealed from appellant. Immediately after the child was born Sue placed the child for adoption with respondents. Appellant was not requested to support the child and he furnished no support for the child. Appellant publicly declared that he was the father of the child, but his efforts to legitimize the child by taking it into his family were unsuccessful, because of Sue's objections. The trial court found therefore that the appellant did not legitimize the child under Civil Code, section 230, and that his consent was not necessary for the child's adoption.
 Appellant contends that it is not necessary for the natural father to take the child physically into his family circle where the father has made reasonable efforts to receive the child into his family circle and these efforts have been unsuccessful because of the objections of the child's natural mother. Appellant urges that Civil Code, section 230, should be liberally construed so as to effect the legitimation of the child.
 The respondents, prospective adoptive parents, argue that the mother of an illegitimate child has the exclusive right to the custody and control of the child. She therefore must impliedly consent to the legitimation of the child by his natural *240 father, since the father must receive the child into his family circle in order to comply with Civil Code, section 230. He cannot do this unless the mother is willing to give him custody of the child. The Department of Social Welfare contends that there must be a compliance with Civil Code, section 230, before the consent of the father of a child otherwise illegitimate is required for the child's adoption. The Department does not take any position on the central issue of whether or not the appellant satisfied the requirements of that code section.
 The resolution of the issues herein does not require the application of the policy of the law which favors legitimation, since in any event the child will be legitimated, either by acknowledgment by its father under Civil Code, section 230, or by adoption by the respondents. (Adoption of Graham, 58 Cal.2d 899, 904 [27 Cal.Rptr. 163, 377 P.2d 275].) It was held in the case of Estate of De Laveaga, 142 Cal. 158, 169 [75 P. 790], that the requirement of Civil Code, section 230, that the father of an illegitimate child must receive the child into his family must be strictly complied with. The court said that the language of the code section is too plain to be misunderstood and that the Legislature in adopting section 230 went as far as public policy would justify in this respect. The Supreme Court in that case distinguished two of its previous decisions, those of In re Jessup, 81 Cal. 408 [21 P. 976, 22 P. 742, 1028, 6 L.R.A. 594], and Blythe v. Ayres, 96 Cal. 532, 557 [31 P. 915, 19 L.R.A. 40], which are relied upon by appellant herein. More recently in the case of Guardianship of Smith, 42 Cal.2d 91, the court said at page 93 [265 P.2d 888, 37 A.L.R.2d 867]: "When the mother and father of an illegitimate child are both alive and he has not legitimated, the mother is entitled to his custody, service and earnings to the exclusion of the father." On page 98, one of the justices concurring in the majority opinion said: "A father may legitimate the child by marrying the mother (Civ. Code, 215) or 'by publicly acknowledging it as his own, receiving it as such, with the consent of his wife, if he is married, into his family, and otherwise treating it as if it were a legitimate child.' (Civ. Code 230.) On the record before us we must assume that the father did not legitimate his children because he was unable to do so." (Italics added.) This case recognizes that there are two situations in which the father of an illegitimate child cannot legitimate the child even though he *241 is willing to do so. The first situation is where his wife, who is not the mother of the child, refuses to permit him to receive the child into the family circle, and the second is where the natural mother of the child refuses to give up custody of the child thereby preventing him from receiving the child. If either of these consents is lacking, he may not legitimate the child.
 Civil Code, section 224, provides in part: "A legitimate child cannot be adopted without the consent of its parents if living; ... nor an illegitimate child without the consent of its mother if living; ..." In the case of In re Campbell, 9 Cal.App.2d 622, 623-624 [51 P.2d 138], the court commented on this code section as follows: "The code section contains no ambiguous language and requires no interpretation. It declares in plain terms that an illegitimate child cannot be adopted without the consent of the mother if living. If the legislature had intended that the consent of the father was also necessary, it would have said so in simple language as it did in the first part of the section relating to the adoption of a legitimate child. On the authority of decisions taken from other jurisdictions the appellant argues that as a general rule the putative father of an illegitimate child is entitled to preference in its adoption if found competent and suitable for that purpose. The argument is persuasive in so far as it states a general rule bearing on the discretion of the court in adoption proceedings, but it has no force here for two reasons--the code section places no such limitation upon the exercise of the discretion of the court, and there is no finding that the appellant was competent and suitable." In commenting upon a similar situation in the case of Adoption of Laws, 201 Cal.App.2d 494, 498 [20 Cal.Rptr. 64], the court said that to permit the setting aside of consents to adoptions which are sufficient when made and "thereby deprive the court of its power to proceed with the adoption would be to open the door to practices which could conceivably discourage adopting parents from opening their hearts and homes to unwanted children and also subject them to the possibility of becoming the prey of designing persons." A rule which would give the father of an illegitimate child the right of "first refusal" of the child would create the possibility of grave abuses in adoption proceedings. The market for babies is a seller's market. See Moppets on the Market: The Problem of Unregulated Adoptions, 59 Yale Law Journal, 715. If the consents of illegitimates' fathers were required to complete *242 adoption proceedings, the work of social workers and others who must secure the necessary consents would be immeasurably increased. In many cases, the fathers could not be found and the proceedings would be delayed. Any relaxation of the requirements of Civil Code, section 230, would open the door to fraud and coercion.
 [1] The Legislature has made detailed and specific provisions for the adoption of minors. The legislative purpose behind these provisions is best served and the interests of the child are afforded the greatest recognition by giving continued effect to relinquishments and consents to adoption which are valid when entered into and filed in a manner provided by law. (Adoption of Graham, supra, 58 Cal.2d 899, 907.)
 It is often said in adoption proceedings, as in other matters involving children, that the court should be governed by what is in the best interests of the child. In this case, the mother is little more than a child herself. If it were held that the father (who is also a minor and certainly not in a position to take care of and support the child) has the right to block the adoption proceeding, the mother will be faced with a decision as to whether she will raise the child herself or permit the father to have its custody. The mother, like the child's father, is immature and too young to assume the responsibility of raising the child; yet she would probably prefer to keep the child rather than permit the father to take it. If the mother is forced to rear the child, her chances of completing her education and of entering into a normal and happy marriage will be substantially diminished. Certainly the plan which the mother has embarked on here is the one most likely to effect the future happiness of the child and its mother.
 [2] We therefore hold that where the mother of an illegitimate child refused to permit the father to legitimate the child, his consent to the adoption of the child is not necessary and the mother's consent is a sufficient relinquishment to authorize the court to enter a decree of adoption.
 Judgment affirmed.
 Coughlin, J., and Brown (Gerald), J., concurred.