[Civ. No. 22392. First Dist., Div. Three. Sept. 15, 1965.]

Guardianship of SUZANNE MARIE TRUSCHKE, a Minor. JOHN F. TRUSCHKE, III, Plaintiff and Appellant, v. SUZANNE MARIE LA ROCCA, a Minor, etc., Defendant and Respondent.

76

Madsen & Sposeto and Dominic J. Sposeto for Plaintiff and Appellant.

Rankin, Oneal, Luckhardt, Center, Longinotti & Ingram, Dan Oneal and Aidan R. Gough for Defendant and Respondent.

SALSMAN, J.—John F. Truschke III appeals from a portion of a judgment which denied his petition for appointment as guardian of his illegitimate daughter. The trial court

found that John had failed to legitimate his child in conformance with the requirements of Civil Code section 230.

The principal issue on appeal is whether appellant by his conduct succeeded in legitimating his natural daughter.

The facts are not in dispute. John Truschke and Suzanne Marie La Rocca met when Suzanne was 16 years of age and John was 18. About four months after they first met they agreed to marry. Suzanne's father objected. Suzanne became pregnant with John's child and her father placed her in St. Elizabeth's Home in San Francisco to await the birth of her baby. John continued to see Suzanne. There was testimony that the young couple discussed marriage while Suzanne was at St. Elizabeth's and planned that John would take care of the baby until Suzanne reached her 18th birthday, at which time they would marry. Suzanne was transferred from St. Elizabeth's to St. Mary's Hospital without John's knowledge, but John discovered Suzanne's whereabouts and continued to see her twice a week for an hour a day until their daughter was born.

Before the birth of the baby John bought a crib, baby clothes and other things necessary for the care of an infant. He spent approximately $310 for these items.

After the birth of the baby Suzanne decided not to marry John and refused to give him the child. She told John that she was ''. . . going to put the baby up for adoption.''

At no time did John have physical custody of the baby. He did not physically receive the child into his home, and in fact saw the child only once.

Suzanne placed the child in pre-adoptive foster care, but at the time of trial she had not signed any final relinquishment. Before filing his petition for guardianship, John executed and filed an affidavit in which he acknowledged paternity of baby Suzanne Marie.

Appellant contends that Civil Code section 230 does not require that he take his child physically into his family circle in order to comply with its terms, and that on facts here present, he has fully complied with the provisions of that code section in that the child was constructively brought into his family circle. We do not agree.

Civil Code section 230 provides in part as follows: ''The father of an illegitimate child, by publicly acknowledging it as his own, receiving it as such, with the consent of his wife, if he is married, into his family, and otherwise treating it as if it were a legitimate child, thereby adopts it as such; and

such child is thereupon deemed for all purposes legitimate from the time of its birth.''

■ This section imposes three requirements, all of which must be fulfilled before legitimation can be effected by the natural father. First, he must publicly acknowledge the child as his own. Second, he must receive the child into his home, with the consent of his wife if he is married. Third, he must treat the child as his own legitimate child. (*Darwin* v. *Ganger*, 174 Cal.App.2d 63, 73 [344 P.2d 353]. See also *Estate of Flood*, 217 Cal. 763, 767 [21 P.2d 579].)

Section 230 has been strictly construed. (*Estate of DeLaveaga*, 142 Cal. 158, 169-170 [75 P. 790]; *Adoption of Irby*, 226 Cal.App.2d 238, 240 [37 Cal.Rptr. 879].) ■ Whether the father of an illegitimate child has succeeded in legitimating the child pursuant to the requirements of this section often presents difficult questions of fact, to be resolved in the first instance by the trier of fact, and whose determination is to be upheld on appeal if supported by substantial evidence.

■ Here the trial judge found that although appellant attempted by his conduct to legitimate his child, he did not succeed because he had not brought her into his family circle. That finding is fully supported by the evidence, a portion of which has been recited in the statement of facts. Moreover, the record is entirely silent concerning appellant's home or family circle into which his child could have been received. In *Estate of Baird*, 193 Cal. 225, 279 [223 P. 974], the court pointed out that in order to comply with section 230, the father of an illegitimate child ''. . . must have a home or habitation into which he shall receive his illegitimate child as his own, and that the place where he lives must be a settled or fixed habitation of which he is the head.'' Of course it has also been said that when the father of an illegitimate child lives in a home alone, such home may constitute a ''family'' into which he may receive his illegitimate child. (See *Estate of Baird, supra*, 193 Cal. 225, 279; *Estate of Gird*, 157 Cal. 534, 545 [108 P. 499, 137 Am.St.Rep. 131].) Here the record is replete with references to such facts as appellant's early departure from school, his juvenile record, frequent shifts of employment, and various brushes with authority, but almost nothing is said concerning appellant's home. He did testify that once or twice the baby's mother had said ''I [appellant] can bring the baby home . . .'' and that ''I [appellant] went home and I got everything ready.'' Aside from fleeting references such as these, there is no showing that appellant in fact had any home, family or fixed habitation into which

the child could have been received if its mother had consented. Some evidence should have been presented concerning appellant's family circle or the home into which appellant proposed to receive his child.

Nevertheless, even if appellant did in fact have a home and family circle into which he could have introduced his child, the trial court's finding that he did not receive the child into his family circle must stand. ■ We cannot accept appellant's argument that because of his willingness and desire to receive his child into his home and his purchase of a crib, baby clothes and equipment, he has constructively complied with section 230. Appellant cites such cases as *Lavell* v. *Adoption Institute,* 185 Cal.App.2d 557 [8 Cal.Rptr. 367], and *Estate of Abate,* 166 Cal.App.2d 282 [333 P.2d 200] in support of this contention. But the facts of those cases readily distinguish them from the case we now consider. In *Lavell* the father and mother had lived together as a family unit for some two years before the birth of their second illegitimate child. A few days before the second child's birth, the mother departed from the family home. The court, relying upon section 29 of the Civil Code, properly held that the unborn child had been received into the family of the father and that the requirements of section 230 had been met. In *Estate of Abate, supra,* 166 Cal.App.2d 282, the father and mother lived together during the mother's pregnancy. The father acknowledged the child as his own, but died shortly before its birth. The court found there had been compliance with section 230 and that the child had been legitimated. It clearly appears in each of these cases that there was an existing family unit into which the illegitimate child was born. Here no family unit has ever existed. It cannot properly be said that the casual and unfortunate relationship here involved ever achieved the dignity of de facto family status, such as was present in both *Lavell* and *Abate.*

Finally appellant argues that since the child's mother does not desire its custody, he should be granted dominant parental rights and is therefore entitled to custody. This contention is grounded on Probate Code section 1407, which provides in part: "Of persons equally entitled in other respects to the guardianship of a minor, preference is to be given as follows: (1) To a parent; . . ." To accept appellant's argument would be to hold that the mother of an illegitimate child could not validly relinquish it for adoption without first obtaining the consent of the natural father, in cases

where the natural father wishes to assert a right to guardianship of the child. We reject this proposal. ■ Civil Code section 200 gives the mother of an illegitimate child the right to its custody. Where the mother is alive and is otherwise a fit parent, and the child has not been legitimated by its father, this right is absolute, to the exclusion of any right the father might have by virtue of his paternity. (*Darwin* v. *Ganger, supra,* 174 Cal.App.2d 63, 70.) ■ The right to custody given to the mother by the Civil Code necessarily implies the right to full control over the child, including the power and right to place it with others for adoption. (See *Adoption of Irby, supra,* 226 Cal.App.2d 238, 240-241.) ■ Section 1407 of the Probate Code must be read in the light of section 200 of the Civil Code. When this is done it is clear that Probate Code section 1407 is subordinate to Civil Code section 200, and that the Civil Code section must be given paramount effect.

■ We conclude therefore that the trial court was correct in finding that appellant had failed to legitimate his daughter and in refusing to appoint appellant as her guardian.

That portion of the judgment appealed from is affirmed.

Draper, P. J., and Devine, J., concurred.