196 N.W.2d 76 (1972)
In the Matter of the Custody of the Minor Child, Holly KLUNDT.
Jack DITTUS, Petitioner and Appellant,
v.
GRAND FORKS COUNTY WELFARE BOARD and Beverly Klundt, Defendants and Respondents.
Civ. No. 8731.
Supreme Court of North Dakota.
March 28, 1972.
*77 Gordon O. Hoberg, Napoleon, for petitioner and appellant.
F. John Marshall, Grand Forks, for defendant and respondent Grand Forks County Welfare Board.
TEIGEN, Judge.
Jack Dittus appeals from a judgment denying his petition for a writ of habeas corpus, through which proceeding he is seeking to obtain custody of an illegitimate child whom he alleges to be his child.
The trial court dismissed his petition for the reason that Dittus had failed to establish paternity. Dittus has appealed, specifying that the court erred in refusing to admit in evidence his written acknowledgment of paternity and a cancelled check made out to the mother of the child, and in failing to decree custody of the child to him. He also demanded a trial de novo in this court.
The record made in this proceeding is very short and meager. However, it appears from the transcript, the exhibits, and the arguments of the attorneys that the following are the facts, which are without dispute.
Beverly Klundt, an unwed mother, gave birth to a child at St. Michael's Hospital in Grand Forks, North Dakota, on December 4, 1970. On December 9, 1970, she instituted proceedings in the juvenile court of Grand Forks County for the termination of her parental rights to the child. After a hearing the juvenile court terminated the parental rights of Beverly Klundt and the child was placed in the custody of the Grand Forks County Welfare Board and ordered transferred to Children's Village, a child placement agency in Fargo, for adoptive placement in a suitable home. On December 23, 1970, the child was placed in an adoptive home by Children's Village, where the child still remains.
This proceeding was instituted by the issuance of a writ of habeas corpus on January 15, 1971. Beverly Klundt, the mother of the illegitimate child, and the petitioner, Jack Dittus, are both single persons. There has been no judicial determination of paternity of the child. It further appears that Jack Dittus has never seen nor possessed the child of which he now seeks custody.
Jack Dittus takes no issue with the parental termination proceedings in the juvenile court of Grand Forks County. It is his contention that the parental rights of Beverly Klundt having been terminated, that he, Jack Dittus, upon establishment that he is the father of the illegitimate child, is entitled to the child's custody as against all persons unless it is shown that he is not a suitable person to have such custody. He premises his claim to custodial rights on Section 30-10-07, N.D.C.C., which is a part of our guardianship laws. It provides, in part:
"Of two persons equally entitled to the custody in other respects, preference is to be given as follows:
"1. To a parent; * * *"
For this reason he contends that the court erred when it refused to permit him to adduce proof that he is the father of the child.
It appears that before we may consider the specifications of error we must decide whether Mr. Dittus has a legal right under Section 30-10-07, N.D.C.C., to claim that he is the father of this child.
The juvenile court means the district court of this state. Section 27-20-02(9), N.D.C.C. Section 27-20-03(1) (b), N.D. C.C., provides:
"1. The juvenile court has exclusive original jurisdiction of the following proceedings, which are governed by this chapter:
"a. * * *
"b. Proceedings for the termination of parental rights except when a part of an adoption proceeding; * * *"
*78 The juvenile court's powers in respect to the termination of parental rights are provided in the following sections:
"1. The court by order may terminate the parental rights of a parent with respect to his child if:
"a. The parent has abandoned the child;
"b. The child is a deprived child and the court finds that the conditions and causes of the deprivation are likely to continue or will not be remedied and that by reason thereof the child is suffering or will probably suffer serious physical, mental, moral, or emotional harm; or
"c. The written consent of the parent acknowledged before the court has been given.
"2. If the court does not make an order of termination of parental rights it may grant an order under section 27-20-30 if the court finds from clear and convincing evidence that the child is a deprived child."
Section 27-20-44, N.D.C.C.
"1. The petition shall comply with section 27-20-21 and state clearly that an order for termination of parental rights is requested and that the effect thereof will be as stated in the first sentence of section 27-20-46.
"2. If the paternity of a child born out of wedlock has been established prior to the filing of the petition the father shall be served with summons as provided by this chapter. He has the right to be heard unless he has relinquished all parental rights with reference to the child. The putative father of the child whose paternity has not been established, upon proof of his paternity of the child, may appear in the proceedings and be heard. He is not entitled to notice of hearing on the petition unless he has custody of the child."
Section 27-20-45, N.D.C.C.
"An order terminating parental rights of a parent terminates all his rights and obligations with respect to the child and of the child to or through him arising from the parental relationship. The parent is not thereafter entitled to notice of proceedings for the adoption of the child by another nor has he any right to object to the adoption or otherwise to participate in the proceedings."
Section 27-20-46, N.D.C.C.
"1. If, upon entering an order terminating the parental rights of a parent, there is no parent having parental rights, the court shall commit the child to the custody of the executive director of the public welfare board or a licensed child-placing agency willing to accept custody for the purpose of placing the child for adoption or, in the absence thereof, in a foster home or take other suitable measures for the care and welfare of the child. The custodian has authority to consent to the adoption of the child, his marriage, his enlistment in the armed forces of the United States, and surgical and other medical treatment for the child.
"2. If the child is not adopted within two years after the date of the order and a general guardian of the child has not been appointed by the county court, the child shall be returned to the court for entry of further orders for the care, custody, and control of the child."
Section 27-20-47, N.D.C.C.
In this case it appears that the proceedings for termination were initiated by Beverly Klundt, the unwed mother. No service of a summons or notice thereof was made upon Jack Dittus. It also appears that paternity of the child had not been established and that Dittus did not appear in the proceedings to offer proof of his paternity and ask to be heard. Although the trial *79 court took judicial notice of the termination proceedings, such record was not made a part of the record on this appeal. However, it appears to be agreed that the court, in terminating the parental rights of Beverly Klundt, found that there was no parent having parental rights and thereupon, pursuant to the authority contained in Section 27-20-47(1), N.D.C.C., committed the child to the custody of the executive director of the Grand Forks County Welfare Board and directed that the child be transferred to Children's Village, a licensed child-placing agency, for adoption. It also appears that the said child-placing agency, upon receiving the child, placed her in an adoptive home where she now resides.
Dittus does not challenge the legality of the termination proceedings. In arguing his right to custody he relies upon the juvenile court proceedings as having effectively terminated the parental rights of the child's mother. He contends, as the child's father, that his right to the child's custody, in the absence of the rights of the mother, is paramount to all. This claim is based on Section 30-10-07, N.D.C.C., quoted above. Dittus acknowledges that in order for his rights to be superior to those of the child's mother there must have been a termination of her parental rights because Section 14-09-05, N.D.C.C., provides:
"The mother of an illegitimate unmarried minor is entitled to its custody, services, and earnings."
The legislature clearly did not intend that the putative father of an illegitimate child, whose paternity has not been established, need be made a party to termination of parental rights proceedings under the Juvenile Court Act. However, the putative father is not, under the statute, deprived of his right to appear and, upon establishing his paternity, has a right to be heard. It is our opinion that an order terminating the parental rights of an unwed mother to her illegitimate child, in a case such as this where the paternity of the putative father has not been established and where he does not appear at the hearing and prove his paternity, also effectually terminates any rights that the putative father may have in the same way as the rights of a nonconsenting father of a legitimate child would be terminated where there was a compliance with the procedural requirements of the statute as to notice and hearing. This is the conclusion arrived at by the Supreme Court of Minnesota in In re Zink, 264 Minn. 500, 119 N.W.2d 731, 735 (1963) in interpreting Minnesota statutes in a similar case. It is also the conclusion arrived at by the Wisconsin Supreme Court in State ex rel. Lewis v. Lutheran Soc. Serv. of Wis. & Upper Mich., 47 Wis.2d 420, 178 N.W.2d 56 (1970), in an analogous case. With these conclusions we agree.
Parents of illegitimate children, as well as parents of legitimate children, have no vested rights in their children requiring protection accorded to property rights. 59 Am.Jur.2d Parent and Child, Section 8; 2 Am.Jur.2d Adoption, Section 4; 67 C.J. S. Parent and Child § 11, at 636.
Where a legal order terminating the parental rights of the mother to her illegitimate child was made, and where notice of the proceedings was given in accordance with the requirements of the statute, it is our opinion that the custody preferences provided by Section 30-10-07, N.D. C.C., upon which Dittus relies, are subordinated to the custody rights provided by the termination order. The termination order must be given paramount effect over the preferences contained in Section 30-10-07, N.D.C.C.
Consistent with the statutes on termination of parental rights in respect to notice are the adoption statutes. These statutes provide that it is not required to give notice to or to obtain the consent from the putative father of an illegitimate child who has not been legitimated according to the laws of the place where the adoption proceeding is brought. Sections 14-15-05 and 14-15-06, N.D.C.C.
It therefore appears that the right to custody given to the mother of an illegitimate *80 child by Section 14-09-05, N.D. C.C., necessarily implies the right to the full control over the child, including the power and right to place the child with others for adoption and, where the child has not been legitimated, her consent to the child's adoption is all that is required. This also appears to be the general rule. 2 Am.Jur.2d Adoption, Section 26. See also, In re Adoption of Irby, 226 Cal.App. 2d 238, 37 Cal.Rptr. 879 (1964); Truschke v. La Rocca, 237 Cal.App.2d 75, 46 Cal. Rptr. 601 (1965); In re Adoption of Pierce, 15 Cal.App.3d 244, 93 Cal.Rptr. 171 (1971); In re Brennan, 270 Minn. 455, 134 N.W.2d 126 (1965).
For the reasons aforesaid, we conclude that Jack Dittus, the petitioner herein, does not have a right under Section 30-10-07, N.D.C.C., (custody preference) to maintain this proceeding for the purpose of obtaining custody of the child in question. For these reasons the trial court did not err in refusing to admit the proffered testimony and exhibits. We affirm the judgment.
STRUTZ, C. J., and ERICKSTAD, PAULSON and KNUDSON, JJ., concur.