CHAPMAN et al. v. KOENIG.

No. 34126.   Dec. 4, 1951.

*238 P. 2d 357.*

John Rogers and George A. Carlson, Tulsa, for plaintiffs in error.

Logan Stephenson, F. C. Swindell, and O. C. Lassiter, Tulsa, for defendant in error.

PER CURIAM. This is an action wherein Dennis Koenig, individually and as administrator of the estate of Janie Koenig, deceased, plaintiff, seeks to recover from Leta M. Chapman and Pauline C. Walter, defendants, damages done to plaintiff's lands by defendants' cattle grazing thereon. The parties will be referred to as they appeared in the trial court.

Plaintiff and Janie Koenig, deceased, for whose estate he was appointed administrator, were the owners of a 70-acre tract of land in Rogers county, Oklahoma. Defendants were the owners or lessees of approximately 9,000 acres of land, in the same county, which entirely surrounded the lands of plaintiff. Defendants had inclosed all of the property of both parties under one fence and were using the same as a pasture for grazing cattle. None of the property was what is known as open range. From 1917 to 1946, except for possibly two years, plaintiff's land had been mowed annually and the hay had been baled and removed. None of the land had been in actual cultivation for several years. This action was brought to recover the loss of profits for the years 1946 through 1948 and the depreciation in value of the land, all resulting from defendants' pasturing their cattle on the same. Upon trial to a jury, plaintiff recovered judgment for $1,100 loss of profits and $440 damage to the land itself, or a total of $1,540. Defendants admitted the inclosure of plaintiff's land and the use of it as a pasture and they offered or tendered a total of $1 per acre per year as rental. Their entire defense was founded upon the applicability and effect of section 281 of Title 69 O.S. 1941, and particularly that part thereof, as follows:

"In districts composed of two or more sections of land, two-thirds of which is unsuitable for cultivation and is being used for grazing purposes, it shall be lawful to erect and maintain fences across section lines; provided, the owner or lessee of such grazing districts permits public roads to be run anywhere across said district designated by the road overseer, township board, county commissioners, or other official, legally authorized to designate public highways. If the owner or lessee of any such grazing district encloses therein the lands of another, which lands are not being used for agricultural purposes, neither said owner or lessee or the owner or the lessee of such lands so enclosed, shall be liable in any sum for permitting their respective stock, which are being pastured on their said lands, to stray on any of the lands in said grazing district; provided, that no such owner or lessee who is grazing stock at large in said district, shall graze therein more stock than the water and grass of his own lands will support."

Except for the question of the sufficiency of the evidence, relative to the amount of damage, to sustain the verdict and judgment, all of defendants' arguments and defenses, here and in the trial court, stand or fall upon the determination of whether or not the

above-quoted statute applies to the instant situation. That conclusion depends upon whether or not plaintiff's lands were "being used for agricultural purposes" when they were inclosed and used as pasture by defendants. If they were being so used, the immunity of defendants from liability for damages as provided by the statute is not available to them.

It is universally held that:

"The cardinal rule of statutory construction is to ascertain and give effect to legislative intention." Board of Education of Burbank Independent School Dist. No. 20 v. Allen, 195 Okla. 209, 156 P. 2d 596.

It then becomes necessary to determine what the Legislature intended by the use of the phrase "agricultural purposes" in said statute.

A generally adopted definition of "agriculture" is found in 2 Am. Jur. 395, wherein it is said:

"Agriculture, in the broad and commonly accepted sense, may be defined as the science or art of cultivating the soil and its fruits, especially in large areas or fields, and the rearing, feeding, and management of livestock thereon, including every process and step necessary and incident to the completion of products therefrom for consumption or market and the incidental turning of them to account. The term is broader in meaning than 'farming;' . . ."

and in the case of Ocean Accident & Guaranty Co. v. Industrial Commission, 69 Utah 473, 256 P. 405, it was held that, "Cutting and raking hay are essentially agricultural pursuits." Thus, in its broader sense, the term agriculture includes the raising and feeding of livestock and the preparation of feed needed therefor. But, it is clearly discernible that in wording the above statute the Legislature intended to differentiate between the phrases "grazing purposes" and other "agricultural purposes" for which the land would become unsuitable if used for grazing. This distinction is often recognized.

It was pointed out in the case of Davis v. Industrial Comm. of Utah, 59 Utah 607, 206 P. 267, where the court quoted from The Americana to the effect that agriculture —

" . . . not only includes the tillage of the soil and the cultivation of crops, but also the rearing and feeding of all kinds of farm live stock, and in some instances the manufacture of the products of the farm into such forms as may be more convenient or more valuable for use or for sale. The manufacture of butter and that of cheese constitute recognized branches of the art of agriculture. The distinction between arable agriculture, which includes the cultivation of the ground and the growth of crops, and pastoral agriculture, which comprises merely the feeding and management of the flocks and herds of the farm, has been observed since the earliest times: 'Able was a keeper of sheep, but Cain was a tiller of the ground.' In modern times, and probably in some degree at all times within the historical period, the practice of arable agriculture has been commonly associated in greater or less degree with the keeping and tending of live stock; but over immense tracts of the world's surface that are unfitted for arable cultivation the practice of pastoral agriculture still prevails, as in ancient days, wholly unmixed with the plodding labors of the husbandman."

Such a distinction was indirectly noticed by this court in the case of Tucker v. Mullendore, 180 Okla. 180, 69 P. 2d 35, wherein, in holding the above statute constitutional it was observed:

"Beyond doubt, stock raising is an integral part of the industrial life of this state. It may rightly be regarded as a basic industry; increasingly essential to the general welfare. From a very early day, it has been a matter of common observation that in this state there is much land unfitted for any purpose but grazing stock. The Legislature doubtless had this in view when it passed the grazing law. Obviously, the lands involved in this action were purchased or held by the owners purely for grazing purposes. Passing, incidentally, upon the same statute, the

Criminal Court of Appeals of this state in Yunker v. State, 53 Okla. Cr. 82, 7 P. 2d 916, we held: 'It is not unlawful in county where grazing is more important than agriculture to fence grazing land, with gate crossing public road.' "

We conclude, therefore, that the Legislature, in adopting said section 281 of Title 69 O.S. 1941, intended to grant to cattle raisers the right to inclose under one fence, with their own land "composed of two or more sections of land, two-thirds of which is unsuitable for cultivation and is being used for grazing purposes," the lands of other persons whose use of their lands would not be interfered with. Other phrases in the act would indicate that the Legislature intended to permit the inclosure, without liability for damages, of only those lands of "another" which also are being used for grazing purposes, but we are here called upon only to determine whether or not cutting and baling hay constitute "agricultural purposes," which we hold they do.

With this conclusion, defendants' argument relative to the court's instructions to the jury have no foundation. As to the question of the sufficiency of the evidence relative to the amount of damage suffered by plaintiff, the witnesses had not made as close an examination of plaintiff's land as they probably should have. They were, however, local residents very familiar with all land in the vicinity of plaintiff's and also familiar with the kind and amount of damage done to it by being used for grazing purposes. This court has never deviated from the rule that the verdict of a jury will not be disturbed on appeal for insufficiency of evidence if there is any competent evidence reasonably tending to support it.

The judgment is affirmed.

WELCH, CORN, DAVISON, JOHNSON, O'NEAL, and BINGAMAN, JJ., concur. GIBSON, J., dissents.