[Civ. No. 35629. Second Dist., Div. Five. Feb. 16, 1971.]

Adoption of SHANA RACHEL PIERCE, a Minor.
RAYMOND S. KAPLAN, Plaintiff and Respondent, v.
JERRY PIERCE, Defendant and Appellant.

## COUNSEL

Herbert E. Selwyn for Defendant and Appellant.

Ross & Saunders and Saul Ross for Plaintiff and Respondent.

## OPINION

**STEPHENS, Acting P. J.**—This appeal is from an order of adoption granting the step-father's petition for adoption of the minor, Shana (also known as "Shayna"). The appellant is the natural father of the minor and objected to the petition for adoption. He contends that though the child was born out of wedlock and neither parent was then married to another, by certain acts of his the child had been legitimated in accordance with the provisions of Civil Code section 230,[1] and that the consent of both parents of

---

[1]Civil Code section 230: "*Adoption of illegitimate child.* The father of an illegitimate child, by publicly acknowledging it as his own, receiving it as such, with the

a legitimated child must be obtained prior to any adoption, and he has not given his consent.

The facts are that Shana was born on January 30, 1966 to Sally Kay Petteys, then unmarried (now, Salonge K. Kaplan). On November 29, 1967, Jerry Pierce filed an inverse paternity action[2] in the superior court (Jerry Pierce v. Sally Kay Petteys, No. NCD 7259-B), in which he asked the court to find that he was the father of Shana and that he be granted visitation rights. An answer was filed on December 11, 1967, in which Sally admitted that she was the mother of the minor involved, and that Jerry was the natural father. On the same day, Sally filed a cross-complaint[3] in which she requested that the court declare that Jerry was the natural father of the minor and that he be ordered to pay child support. On January 16, 1968, pursuant to stipulation, an order issued requiring Jerry to pay child support in a stated amount, and permitting him limited visitation rights, as set forth in the stipulation.[4]

On April 9, 1968, and again on June 3, 1968, Jerry brought contempt proceedings against Sally for refusing to permit visitation rights. The contempt proceedings were dismissed.

---

consent of his wife, if he is married, into his family, and otherwise treating it as if it were a legitimate child, thereby adopts it as such; and such child is thereupon deemed for all purposes legitimate from the time of its birth. The foregoing provisions of this Chapter do not apply to such an adoption."

[2] The action apparently was one brought under Civil Code section 231: "An action may be brought for the purpose of having declared the existence or nonexistence between the parties of the relation of parent and child, by birth or adoption.

"The district attorney may also bring an action under this section in any other case in which he believes that the interests of justice will be served thereby."

[3] The cross-complaint is based on Civil Code section 196a, which reads, in pertinent part: "The father as well as the mother of an illegitimate child must give him support and education suitable to his circumstances. A civil suit to enforce such obligations may be maintained in behalf of a minor illegitimate child by his mother. . . ."

[4] The stipulation reads in pertinent part as follows: "IT IS HEREBY STIPULATED by and between the parties hereto, through their respective counsel, that pending trial of the above matter:

"1. That defendant [Sally] shall have the care, custody and control of the minor child, SHANA RACHEL PIERCE, born January 30, 1966

"2. That plaintiff shall have visitation with said minor child for a period of five hours on either Saturday or Sunday of each week-end at a time to be mutually agreed by the parties commencing with the week-end of January 6, 1968, and continuing until further order of Court; *provided, however, that said visitation shall not take place in the home of either plaintiff or defendant or in the office of plaintiff;* and provided further that defendant may be present during such times of visitation with said minor child." (Italics added.) The visitation order was subsequently modified on June 26, 1968. The modification permitted Jerry to have the child for the same time periods set forth in the stipulation, but replaced Sally's presence with that of a nurse to be provided and paid for by Sally, and did not limit the place of visitation.

The inverse paternity and support actions went to trial on July 25, 1968. On October 1, 1968, judgment was entered, declaring Jerry to be the father of Shana; awarding custody to Sally; granting right of reasonable visitation to Jerry, which included physical custody of Shana for five hours on Wednesday of each week; and ordering Jerry to pay child support in stated amounts. Prior to that judgment, Sally married Raymond S. Kaplan on April 13, 1968, and on July 30, 1968, Raymond filed a step-parent adoption petition in the superior court. At the hearing, Jerry testified in opposition to the granting of the petition, urging denial because of the lack of his consent.[5] On September 5, 1969, at the conclusion of the three-day hearing, the court granted the petition for adoption, having made a specific finding that Jerry "has not legitimated the minor child involved herein and that the consent of the natural mother alone is necessary for adoption."[6] This appeal followed a denial of Jerry's motion to vacate the adoption decree which had been entered on September 17, 1969.

Though the testimony of the parties and witnesses at the adoption hearing is of concern and evokes sympathy for both sides in this contest, it is not necessary to set it forth here, for the trial judge determined the facts, and it is that determination of fact upon which we must rely, unless it can be said that the conclusions are not supported by any evidence, and this we do not find. Much of the testimony related to the time of Jerry's and Sally's association prior to, at the time of, and after, the birth of Shana but before the time of the filing of the inverse paternity action. Evidence of Jerry's denial of filiation and of his admission thereof during that period strongly conflicted, as did the evidence relative to his "treating [Shana] as if [she] were a legitimate child." The conclusion reached by the trial court that there was no "legitimation" prior to the inverse paternity action can hardly be questioned, let alone upset, as an improper determination of the conflicting evidence. All elements of section 230 must be coexistent for the accomplishment of legitimation. As of the date Jerry filed his section 231 action, did the order in the inverse paternity action become res judicata of the issue of legitimation of the minor and hence necessitate a consent by both parents for the adoption, as contended by Jerry?

It should be first noted that the action for inverse paternity when brought under Civil Code section 231 is an action not related to either legitimation or adoption, as that section pertains only to establishment "of the relation of parent and child, by birth or adoption." More important,

---

[5] Some 15 witnesses testified, and the facts relative to Jerry's having taken Shana into his family and his publicly acknowledging and treating the child as his own (as required by Civ. Code, § 230) were strongly contested.

[6] See *Adoption of Pierce,* 5 Cal.App.3d 316, 318-319 [85 Cal.Rptr. 104].

however, are the requirements under Civil Code section 230[7] to accomplish the fact of legitimation and adoption, that not only is there the necessity for the ascertainment of the relationship of parent and child, but the necessity for the father's public acknowledgment of that fact, the receiving of the child into the father's family, and his treatment of the child as though it were legitimate. As neither of these latter two requirements is a necessary element of the finding of paternity under section 231, the declaration resulting from an action under that section is not res judicata of all the issues governed by section 230. ■ Where, however, there has been an adjudication under section 231 as to the paternity, that element of section 230 would not be subject to dispute. (*Garcia* v. *Garcia,* 148 Cal.App.2d 147 [306 P.2d 80].) Certainly, also, the fact that the father had instituted the section 231 action *to have declared his filiation to the child* is a public acknowledgment of that relationship.

Of the three prerequisites necessary to accomplish an adoption under section 230, in the instant case, the one of paternity has been established as a matter of law (in fact, by judicial decree). The second prerequisite, that of public acknowledgment, is certainly established under the instant circumstances, and by both the father and mother (on behalf of the child) petitioning the court in the section 231 and section 196a proceedings to have the filiation decreed, they are judicially bound by that finding. However, there was nothing before the court in those proceedings which involved the determination of whether the father "receiv[ed] [the child as his own] . . . into his family, and otherwise treat[ed] it as if it were a legitimate child." Thus, the third prerequisite remained as an issue to be determined in the adoption proceeding.

■ The "family"[8] referred to in the statute has been interpreted to mean no more than that the father must have a home, a settled place of habitation of which he is the head, into which he must receive the child. (*Estate of Baird,* 193 Cal. 225, 279 [223 P. 974]; *Estate of Gird,* 157 Cal. 534, 545 [108 P. 499].) This is the circumstance under which we must examine the facts to ascertain whether the acts of the natural father were such as to have accomplished his having taken the child into his home within the meaning of section 230 and as a matter of law. We recognize that where there is any conflict in the evidence as to "what the natural father did," the conclusion drawn by the trial court is binding upon us.

The meaning of the term "family" as it is used in section 230 has also

---

[7] (Quoted here, *supra,* in footnote 1.)

[8] The word "family" is not a technical word, and is of flexible meaning. (See *Estate of Bennett,* 134 Cal. 320, 323 [66 P. 370]; Jarman on Wills, p. 941.)

been considered in *Darwin v. Ganger,* 174 Cal.App.2d 63, 72 [344 P.2d 353]: "If a man has no wife, he can legitimate his offspring by a course of conduct which the community could consider a public acknowledgment that he was the father of the child (*Estate of Gird,* 157 Cal. 534, 542-543 [108 P. 499]) but the existence of such public acknowledgment by an unmarried man is a question to be decided on the circumstances of each case. (*Estate of Baird,* 193 Cal. 225, 274-279 [223 P. 974].) Where a man has no wife, he can publicly acknowledge his child notwithstanding the fact that he does not maintain a household into which the child is taken. (See *Blythe v. Ayres, supra,* 96 Cal. 532, 560, 592-593; *In re Jessup,* 81 Cal. 408, 433-434 [21 P. 976, 22 P. 742, 1028].) If the man is unmarried the 'family' referred to in section 230 may consist only of the father, the mother, and the child. (*Estate of Gird, supra,* 157 Cal. 534, 540; *Serway v. Galentine,* 75 Cal.App.2d 86, 90 [170 P.2d 32].) Thus, an unmarried man may legitimate his offspring by living with the mother and child for a short period during which he represented the mother as his wife and the child as his own. (*Serway v. Galentine, supra,* 75 Cal.App.2d 86, 90-91.)" If we assume that Jerry did everything within his power to take the child into his "family," but has been thwarted from physically taking her into his family because of objections of the child's mother, we face the problem of determining whether the mother of an illegitimate child has the right to the custody and control of the child and therefore must (impliedly, at least) consent to the legitimation of the child by its natural father, since the father must receive the child into his family circle in order to comply with the Civil Code.

In *Estate of De Laveaga,* 142 Cal. 158, 169 [75 P. 790], it was held that the section 230 requirement that the father of an illegitimate child must receive the child into his family must be strictly complied with. In so holding, it distinguished two previous decisions: *In re Jessup,* 81 Cal. 408 [21 P. 976, 22 P. 742, 1028] and *Blythe v. Ayres,* 96 Cal. 532 [31 P. 915]. In the instant case, the mother cites *Adoption of Irby,* 226 Cal.App.2d 238 [37 Cal. Rptr. 879] as determinative of the question.[9] ■ In *Irby* (at pp. 240-241) the court cites *Guardianship of Smith,* 42 Cal.2d 91 [265 P.2d 888, 37 A.L.R.2d 867] to the effect that "[*Smith*] recognizes that there are two situations in which the father of an illegitimate child cannot legitimate the child even though he is willing to do so. The first situation [is] where his wife, who is not the mother of the child, refuses to permit him to receive the child into the family circle, and the second [is] where the natural mother of the child refuses to give up custody of the child thereby preventing him from receiving the child. If either of these consents is lacking, he may not legitimate the child." *Irby* concludes with the holding (at p. 242):

[9]See also *Guardianship of Truschke,* 237 Cal.App.2d 75, 79, 80 [46 Cal.Rptr. 601].

■ "We therefore hold that where the mother of an illegitimate child refused to permit the father to legitimate the child, his consent to the adoption of the child is not necessary and the mother's consent is a sufficient relinquishment to authorize the court to enter a decree of adoption."

■ We find that the *Irby* reasoning and holding are controlling in the instant case. The trial court found on substantial evidence that Jerry had not legitimated the child. Appellant contends that the visitation rights allowed by stipulation and the subsequent modification of the stipulation provide the necessary element for legitimation. A reading of the stipulation for visitation approved by the trial court clearly shows that the mother in no way consented to legitimation, nor did she expressly or impliedly consent to the subsequent modification. If, at any time, Sally had consented and Jerry performed the necessary acts required for legitimation under Civil Code section 230, any later attempt to withdraw consent would have no effect. The very fact that the mother, or the agent of the mother (the nurse) had to be present at all times with the child in whatever surroundings that Jerry sought to provide indisputably establishes that there was no relinquishment of complete guardianship control by the mother.[10] Thus, Jerry at no time could take the child into his family circle within the meaning of Civil Code section 230. Subsequent modification of visitation rights were against her specific wishes. She opposed any right to visitation by Jerry, thus effectively prohibiting any inference of consent to Jerry's taking the child into his family. At the time the step-parent adoption petition was filed, Jerry had not done all that was required of him to accomplish legitimation, and was prevented from so doing by Sally's withholding her consent.[11] Therefore, only the consent of the mother was required to provide the adoption court jurisdiction over all the necessary parties to enable it to proceed. Once the adoption court acquired that jurisdiction, no subsequent act on the part of the father could divest it thereof. (See *Adoption of Bar-*

---

[10]Civil Code section 200 provides: *"Custody of an illegitimate child.* The mother of an illegitimate unmarried minor is entitled to its custody, services and earnings."

[11]Case Note (1938-39) 12 So.Cal.L.Rev. 97, 98: "Another substantive rule, at common law, and under the code, is that the mother of an illegitimate child is entitled to its custody against all the world, unless she is judicially determined to be unfit. The consent of the mother is expressly required in the case of a judicial proceeding to adopt an illegitimate child. [Fns. omitted.]

"The argument against requiring consent is that it is not expressly required by the code section; which provides a list of things required for adoption. But since the intent was for a mere procedural change, and the requirements listed are in the nature of substitutes for the judicial proceedings—that is, public acknowledgement of parentage, reception into the family, consent of the wife, if the adopting father is married, and other treatment as if the child were legitimate—there is no sound basis for using the section to alter the right of the mother of the child to its custody if she does not want to give it up voluntarily." See also *Blythe* v. *Ayres,* 96 Cal. 532, 570-575 [31 P. 915].

*nett,* 54 Cal.2d 370, 377 [6 Cal.Rptr. 562, 354 P.2d 18]; *Adoption of Laws,* 201 Cal.App.2d 494, 500 [20 Cal.Rptr. 64].)

The father's contention is that it is not possible to ascertain upon what ground the court ruled that his consent was not necessary, for it refused to make findings of fact. He recognizes that an adoption as such is a statutory proceeding and that *Adoption of Thevenin,* 189 Cal.App.2d 245 [11 Cal.Rptr. 219] and *In re Peterson,* 56 Cal.App.2d 791 [133 P.2d 83] hold that written findings are not required and that the question then becomes not one of sufficiency of the evidence, but only whether the court abused its discretion in granting the petition. In *Thevenin,* the court was called upon to determine whether or not the mother had failed to communicate with the child (though the mother was able to do so) for such a period of time as to amount to an abandonment within the provisions of Civil Code section 224, which abandonment would make unnecessary the filing of the consent of the mother to the adoption. The holding there permitting the adoption necessarily was founded upon that specific finding of fact or the lack of the mother's consent would deny the court of jurisdiction to grant the petition. In the instant case, the issue before the court was whether the natural father had legitimated the child within the meaning of Civil Code section 230, and the only prerequisite-satisfaction not established by judicial decree is whether the natural father had taken the child into his "family" so as to complete legitimation. If he had, his consent to the adoption was as necessary to the jurisdiction of the court to grant the petition as it was in *Thevenin.* We conclude that the father's contention that findings are here necessary has heretofore been determined against his position and for reasons which we deem proper, without their restatement.

Accordingly we hold that the trial court was correct in its ruling that the father had not legitimated the child, and that only the mother's consent was required for the adoption.

The judgment is affirmed.

Aiso, J., and Reppy, J., concurred.

Appellant's petition for a hearing by the Supreme Court was denied April 14, 1971. Peters, J., and Sullivan, J., were of the opinion that the petition should be granted.