[Civ. No. 33996. First Dist., Div. Two. Nov. 22, 1974.]

Estate of EDWARD J. GINOCHIO, Deceased.
SEANE GINOCHIO, a Minor, etc., Claimant and Appellant, v.
PERRINA J. GINOCHIO, as Executrix, etc., Objector and Respondent.

414

**COUNSEL**

Mancuso & Mancuso and P. John Mancuso for Claimant and Appellant.

Allen, Poggi & Hofmann and Thomas F. Poggi for Objector and Respondent.

**OPINION**

**KANE, J.**—Petitioner Seane Ginochio ("Seane") appeals from an order denying his motion to set aside the order admitting the will of Edward J. Ginochio, deceased, ("Edward") to probate.

The summarized facts indicate that Seane was born July 15, 1961, as a natural child of Marietta Cartillar ("Marietta") and Edward. At the time of Seane's birth Edward was lawfully married to Perrina J. Ginochio ("Perrina"), which marriage lasted from August 30, 1925 until Edward's death. On April 4, 1966, Marietta brought a paternity action against Edward. After a trial in which the issue of paternity was vigorously contested, Edward was found to be Seane's father and ordered to pay child support for him. On May 10, 1966, after the judgment establishing paternity was entered, Edward made a will in which he left his entire estate

to his lawful wife, Perrina, in case she survived him by 90 days, otherwise all his estate was to pass to his daughter, Rosemarie Curzi ("Rosemarie") or her issue. Paragraph Six of the will contained special provisions by which Edward excluded any other person from his estate whether such persons claimed to be his heirs or not, including any child or issue of any deceased child.[1]

On October 31, 1971, Edward died, survived by both Perrina and Rosemarie. On December 7, 1971, Perrina filed a petition for probate of will and for letters testamentary. Hearing was set by the court for December 23, 1971. Since Seane was not listed in the petition as an heir, legatee or devisee, no notice of hearing was sent to him. Claiming that the lack of such notice deprived the probate court of jurisdiction, Seane moved to set aside the order admitting will for probate. The probate court denied the motion. The present appeal followed.

In substance, appellant maintains that he became an heir under Probate Code,[2] section 255, either because the judicial determination of paternity is equivalent to an acknowledgment by the father in writing within the meaning of that statute or because section 255 is unconstitutional. As an heir, it is argued, appellant was entitled to notice of hearing pursuant to section 328, and failure to give such notice was a jurisdictional flaw which deprived the court of the power to proceed (*Estate of Poder* (1969) 274 Cal.App.2d 786 [79 Cal.Rptr. 484]).

In California there is a well-delineated statutory scheme by which a child born out of wedlock may be legitimated. First, a child born before wedlock becomes legitimate by the subsequent marriage of his parents (Civ. Code, § 215). Second, the illegitimate child may be legitimated by adoption under section 230 of the Civil Code.[3] But, in order to legitimate under this latter section, all the statutory requisites must be fulfilled. Thus, it is

---

[1]The pertinent part of Paragraph Six reads as follows: "SIXTH: Except as expressly provided in this Will, I have intentionally made no provision for any other person, whether claiming to be an heir of mine (including child or issue of any deceased child) or not, and if any person shall be successful in a Court of final jurisdiction in establishing a right to any portion of my estate, except as expressly provided in this Will, I give to such person the sum of $1.00 and no more."

[2]Unless otherwise indicated, all references will be made to the California Probate Code.

[3]Civil Code section 230 provides in relevant part that "The *father of an illegitimate* child, by *publicly acknowledging* it as his own, *receiving* it as such, with the consent of his wife, if he is married, *into his family,* and otherwise *treating it as if it were a legitimate child,* thereby adopts it as such; and such child is thereupon deemed for all purposes legitimate from the time of its birth." (Italics added.)

necessary to show: (1) illegitimacy; (2) paternity; (3) public acknowledgment by the father; (4) reception into family; and (5) treatment of the child as legitimate. (*Estate of Flood* (1933) 217 Cal. 763, 774, 779 [21 P.2d 579]; *Laugenour* v. *Fogg* (1942) 48 Cal.App.2d 848 [120 P.2d 690]; 6 Witkin, Summary of Cal. Law (1974 ed.) § 237, p. 4742). In addition to, but distinct from these two methods of legitimation which elevate the illegitimate child to the status of a legitimate offspring giving him all the rights to which a legitimate child is entitled, including the right to inherit from his parents, there is a third mode by which an illegitimate child may be accorded the single right of inheritance from his father. This can be achieved under section 255, which sets forth in pertinent part that *"Every illegitimate child,* whether born or conceived but unborn, in the event of his subsequent birth, *is an heir of* his mother, and also of *the person who, in writing, signed in the presence of a competent witness, acknowledges himself to be the father,* and inherits his or her estate, in whole or in part, as the case may be, in the same manner as if he had been born in lawful wedlock . . ." (italics added).

While paternity is a precondition of legitimation by adoption under Civil Code, section 230, and the judicial determination thereof is conclusive in such a proceeding (*Adoption of Pierce* (1971) 15 Cal.App.3d 244, 249 [93 Cal.Rptr. 171]; *Garcia* v. *Garcia* (1957) 148 Cal.App.2d 147 [306 P.2d 80]), it is to be observed that the establishment of paternity is neither a statutory requisite to obtain inheritance rights under section 255, nor can it serve as a substitute for the statutory mandate which requires in clear and unequivocal terms that the father acknowledge "himself to be the father" in writing, signed in the presence of a competent witness. In light of the clear statutory language, appellant's contention that the judicial determination of paternity should be equated with the public *acknowledgment* of the child, which by definition postulates a voluntary act on the part of the father, is contrary to law (cf. *In re Estate of Pakarinen* (1970) 287 Minn. 330 [178 N.W.2d 714, 715], app. dism. 402 U.S. 903 [28 L.Ed.2d 644, 91 S.Ct. 1384]), and cannot be accepted.

The foregoing discussion inevitably leads to the conclusion that the legal issue of whether or not appellant became Edward's heir does not turn on the judicial determination of paternity, but rather on the factual question whether or not he was acknowledged by Edward in the prescribed statutory fashion. To this question the record at hand gives a definite and unequivocal answer. It shows beyond any shred of doubt that Edward was declared Seane's father against his own will. He denied paternity in the action which was brought by Marietta to establish the parent-child relationship. Although he paid the child support ordered by the court, at

no time did he admit that he was Seane's father. He never lived with, or visited the child, the child was never received into his family, and Edward never signed any writing acknowledging publicly or privately that he was the father of the child. In view of this record, we are compelled to hold that appellant has not been legitimated in any manner authorized by law and therefore failed to qualify as Edward's heir under section 255.

█ We next examine appellant's assertion that section 255 is unconstitutional because it discriminates between legitimate and illegitimate children and between the father and mother of illegitimate children. Although an equal protection challenge to California's laws of intestate succession has not been considered by any prior reported decision (see *Steed* v. *Imperial Airlines* (1974) 12 Cal.3d 115, 124, fn. 6 [115 Cal. Rptr. 329, 524 P.2d 801]), there is abundant direct authority from other jurisdictions, including decisions of the United States Supreme Court, to persuade us that the constitutional attack must fail.

The constitutional precepts concerning impermissible, invidious discrimination have been promulgated and reiterated on numerous occasions. Article I, sections 11 and 21 of the California Constitution guarantee that all laws of general nature shall have a uniform operation, and that no citizen or class of citizens shall be granted privileges or immunities which, upon the same terms, shall not be granted to all citizens. The Fourteenth Amendment of the United States Constitution likewise mandates that no state may deny any person within its jurisdiction equal protection of the laws. █ However, as has been repeatedly pointed out, the *equal protection* preserved by both state and federal Constitutions does not preclude the state from drawing any distinctions between different groups of individuals, but *requires only that persons similarly situated receive like treatment* (*In re King* (1970) 3 Cal.3d 226, 232 [90 Cal.Rptr. 15, 474 P.2d 983]; *Purdy & Fitzpatrick* v. *State of California* (1969) 71 Cal. 2d 566, 578 [79 Cal.Rptr. 77, 456 P.2d 645, 38 A.L.R.3d 1194]). As has been recently phrased in *Reed* v. *Reed* (1971) 404 U.S. 71, 75-76 [30 L.Ed.2d 225, 229, 92 S.Ct. 251]: "The Equal Protection Clause . . . [denies] to the States the power to legislate that different treatment be accorded to persons placed by a statute into different classes on the basis of *criteria wholly unrelated* to the objective of that statute. *A classification 'must be reasonable, not arbitrary, and must rest upon some ground of difference having a fair and substantial relation to the object of the legislation, so that all persons similarly circumstanced shall be treated alike.'* " (Italics added. See also: *Eisenstadt* v. *Baird* (1972) 405 U.S. 438, 446-447 [31 L.Ed.2d 349, 358-359, 92 S.Ct. 1029]; *Weber* v. *Aetna Casualty*

& *Surety Co.* (1972) 406 U.S. 164, 172-173 [31 L.Ed.2d 768, 777-778, 92 S.Ct. 1400].⟩

In the area regulating inheritance rights and interfamily relations the states, as a matter of tradition, have been permitted to make policy judgments;[4] and the broad scope of discretion accorded to them has been consistently observed. Thus, it has been held that the settlement and distribution of decedents' estates and the right to succeed thereto are peculiarly matters of state law (*Harris* v. *Zion's Bank Co.* (1943) 317 U.S. 447, 450 [87 L.Ed. 390, 392-393, 63 S.Ct. 354]; *Strahan* v. *Strahan* (W.D.La. 1969) 304 F.Supp. 40, 42); and the right of inheritance, including the designation of heirs and the proportions which the several heirs shall receive, as well as the right of testamentary disposition are entirely within the control of the state Legislature and are subject only to the conditions prescribed by such body (*Estate of Scott* (1949) 90 Cal.App.2d 21, 23 [202 P.2d 357]; see also: *In re Wilmerding* (1897) 117 Cal. 281, 284 [49 P. 181]; *Estate of Kirby* (1912) 162 Cal. 91, 94 [121 P. 370]; *Estate of Taitmeyer* (1943) 60 Cal.App.2d 699, 708 [141 P.2d 504]).

In line with the aforestated principles, the overwhelming majority of cases have concluded that the distinction between legitimate and illegitimate children in succession laws is not arbitrary and not without reasonable legal basis (*Watts* v. *Veneman* (1973) 476 F.2d 529 [155 App.D.C. 84]; *Strahan* v. *Strahan, supra; Succession of Vincent* (La.App. 1969) 229 So.2d 449; *Schmoll* v. *Creecy* (1969) 54 N.J. 194 [254 A.2d 525, 38 A.L.R.3d 605]; see also: *In re Estate of Hendrix* (1971) 68 Misc.2d 439 [326 N.Y.S.2d 646]; *In re Estate of Ortiz* (1969) 60 Misc.2d 756 [303 N.Y.S.2d 806]).
██ There are several grounds indeed upon which the classification of the Legislature distinguishing between legitimate and illegitimate children may be upheld. First, since there is no vested right to succession, it is subject to such conditions and limitations as the Legislature may prescribe (*Farmers etc. Nat. Bk.* v. *Superior Court* (1945) 25 Cal.2d 842, 845 [155 P.2d 823]; *Estate of Perkins* (1943) 21 Cal.2d 561, 569 [134 P.2d 231]). Second, the state indisputably has a paramount interest in encouraging the institution of marriage and discouraging the birth of il-

---

[4]"The [U.S. Supreme] court over a century ago voiced strong support for state powers over inheritance: 'Now the law in question is nothing more than an exercise of the power which every state and sovereignty possesses, of regulating the manner and term upon which property real or personal within its dominion may be transmitted by last will and testament, or by inheritance; and of prescribing who shall or shall not be capable of taking it.' *Mager* v. *Grima*, 8 How. 490, 493 (1850)." (*Weber* v. *Aetna Casualty & Surety Co., supra* at p. 170, fn. 8 [31 L.Ed.2d at p. 776].)

legitimate children. That it chooses to use its inheritance laws as one of its methods in that effort is entirely within its constitutional province (*Strahan* v. *Strahan; Succession of Vincent;* both *supra*); and, appellant's contention notwithstanding, it cannot be said that such method is unreasonable upon its face or wholly unrelated to the legitimate objectives of the state. Third, statutes which provide that the illegitimate child takes only from and through his mother in the absence of an acknowledgment of his intestate father embody nothing more than the presumed intent of the deceased. Since each person is constitutionally free to dispose of his property in an unfettered manner, it cannot be said that statutes reflecting the probable intent of individuals are unreasonable (cf. *Schmoll* v. *Creecy, supra*).

Our position that section 255 withstands the constitutional challenge has firm support not only in the foregoing cases, but also in *Labine* v. *Vincent* (1971) 401 U.S. 532 [28 L.Ed.2d 288, 91 S.Ct. 1017]. At issue in *Labine* were certain provisions of a Louisiana succession statute that imposed far greater restrictions on illegitimate children than does section 255. Under those provisions an illegitimate child, although duly acknowledged by the natural father, could not claim the rights of legitimate children and could inherit from him only when the father left no descendants, ascendants, collateral relations or surviving wife, and only to the exclusion of the state. The illegitimate child in *Labine* assailed the constitutionality of the statute on both due process and equal protection grounds, advancing in essence the very same arguments as appellant here. In rejecting the claim that barring the illegitimate child from his father's estate constitutes an invidious discrimination, the United States Supreme Court held that the Constitution does not give the court the power to overturn the state's choice under the guise of constitutional interpretation because the justices of the court believe that they can provide better rules. The power to make rules to establish, protect and strengthen family life as well as to regulate the disposition of property is committed by the Constitution to the people and the Legislature of the state; and, absent specific constitutional guarantees, it is for the Legislature, not the judiciary, to select from among possible laws. "Nor is it the court's function to weigh the social value of the statute to determine whether a classification may have been more finely drawn. [Citation.]" (*Steed* v. *Imperial Airlines, supra,* p. 124.)

We are further confirmed in our conclusion by *Estate of Pakarinen, supra,* a case closely analogous to that at bench. In *Pakarinen,* the statute under attack provided in part that "An illegitimate child *shall inherit from his mother* the same as if born in lawful wedlock, *and also from the person*

*who in writing and before a competent attesting witness shall have declared himself to be his father,* provided such writing or authenticated copy thereof shall be produced in the proceeding in which it is asserted; . . ." (italics partially added. Minn. Stat. § 525.172). The putative father whose paternity was established in a judicial proceeding died intestate, leaving no spouse or legitimate children surviving him. Although the appellant in *Pakarinen* produced a private letter in which the father acknowledged her as his daughter, she could not provide the certificate of acknowledgment made before a witness as required by the statute. In affirming the lower court's order decreeing the estate to the decedent's sister, the court first emphasized that when public acknowledgment of paternity is prescribed by statute, the adjudication of paternity designed to fix liability for the support of the child does not confer any right of inheritance and is not equivalent to the requisite statutory proof of acknowledgment. Addressing itself to the constitutional issue whether the statute in question was violative of the equal protection clause of the Fourteenth Amendment, the court stressed that the passing of property upon intestacy is pursuant to statutory will which is considered to be such a distribution as the intestate presumably would have made had he disposed of his estate by will. The general policy is to follow the lead of the natural affections and to consider as most worthy the claims of those who stand nearest to the affections of the intestate. (Cf. 23 Am.Jur.2d, Descent and Distribution, § 10.) Based upon this premise, the court concluded that the provision that the illegitimate child is an unconditional heir of the mother properly expresses the presumed intent of the mother who dies intestate. It is well known that illegitimate children usually stand as close to the affection and concern of their mother as do legitimate children. On the other hand, in the case of a natural father dying intestate an intent that he wishes to make his illegitimate child the object of his bounty may be presumed only where there is an unequivocal public acknowledgment of paternal affection and concern towards the illegitimate child. Since the differing provisions in the statute—said the court—have a reasonable relation to the object of the statute and are to effectuate the presumed desires and intentions of the intestate decedent, the Legislature did not make an impermissible classification even though it placed a greater burden on an illegitimate child than on a legitimate one (*Estate of Pakarinen, supra* at pp. 717-718).

It is easy to see that all that has been said in *Pakarinen* especially holds true in the instant case where the intent of the decedent is not based on a presumption or sheer speculation but on a record, which affirmatively shows that by his will Edward left all his estate to his wife and/or his legitimate daughter to the exclusion of appellant. In addition, the language

used in the will is not only indicative of Edward's intent to preclude appellant from the estate, but also amounts to a valid disinheritance clause under the rules governing wills (*Estate of Bank* (1967) 248 Cal.App.2d 429 [56 Cal.Rptr. 559]).

We are satisfied that the cases cited by appellant in his brief do not impel a different result and are distinguishable from the case at bench. Thus, in *Levy* v. *Louisiana* (1968) 391 U.S. 68 [20 L.Ed.2d 436, 88 S.Ct. 1509], the court held invalid as denying equal protection of laws a Louisiana statute which barred an illegitimate child from recovering for the wrongful death of its mother when such recoveries by the legitimate children were authorized. However, *Levy* was later held inapplicable to cases involving inheritance statutes in *Labine*. In distinguishing *Levy* the court stated: "The cause of action alleged in *Levy* was in tort. It was undisputed that Louisiana had created a statutory tort and had provided for the survival of the deceased's cause of action, so that a large class of persons injured by the tort could recover damages in compensation for their injury. Under those circumstances the Court held that the State could not totally exclude from the class of potential plaintiffs illegitimate children who were unquestionably injured by the tort that took their mother's life. *Levy did not say and cannot fairly be read to say that a State can never treat an illegitimate child differently from legitimate offspring.*" (*Labine* v. *Vincent, supra* at pp. 535-536 [28 L.Ed.2d at p. 292]; italics added; fns. omitted.)

*Weber* v. *Aetna Casualty & Surety Co., supra,* another case upon which appellant places his main reliance, is also distinguishable from the case at bench. While the court concluded in *Weber* that illegitimate children may not be excluded from sharing equally with other children in the recovery of workmen's compensation benefits for the death of their parent, it clearly distinguished the case from the situation presented in *Labine* by spelling out that the decision in *Labine* "reflected, in major part, *the traditional deference to a State's prerogative to regulate the disposition at death of property within its borders* [citation]. *The Court has long afforded broad scope to state discretion in this area.*" (P. 170 [31 L.Ed.2d p. 776]; italics added.) The other cases referred to by appellant (cf. *Gomez* v. *Perez* (1973) 409 U.S. 535 [35 L.Ed.2d 56, 93 S.Ct. 872]; *New Jersey Welfare Rights Org.* v. *Cahill* (1973) 411 U.S. 619, etc. [36 L.Ed.2d 543, 93 S.Ct. 1700]) likewise involve state-created compensation schemes designed to provide close relatives and *dependents* a means of recovery. They are, therefore, inapposite to the case at bench.

■ Having concluded that appellant failed to qualify as an heir under section 255, it follows that he was not entitled to the claimed statutory notice, and the failure of the court to give such notice resulted in no error at all, much less a jurisdictional one.

The judgment is affirmed.

Taylor, P. J., and Rouse, J., concurred.