Filed 2/24/23  Westamerica Bank v. Morales CA1/1

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION ONE

| | |
|---|---|
| WESTAMERICA BANK, as Trustee, etc.,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>GABRIELLA MORALES,<br><br>    Defendant and Appellant. | A165492<br><br>(Solano County<br>Super. Ct. No. FPR049473) |

Probate Code section 6452, subdivision (a)(2)[1] provides that a parent of a child who does not "acknowledge" his or her child is barred from inheriting from the child's estate under the laws of intestate succession.  In this inheritance dispute concerning the remainder of a special needs trust following the death of the child who was the trust's beneficiary, the probate court ruled that Jorge Ovalles's participation in paternity proceedings qualified as an acknowledgment under this provision, rendering him eligible to inherit one-half of the trust's residue.  Appellant Gabriella Morales, the mother of the deceased child, contends that the probate court erred and that Ovalles should be disinherited.  We agree and reverse.

---

[1] All undesignated statutory references are to the Probate Code.

1

# I.  FACTUAL AND PROCEDURAL BACKGROUND

Morales and Ovalles were in a dating relationship when she discovered she was pregnant in February 2014.  When she told Ovalles she was pregnant, he asked her to take the "morning-after pill."  She refused, and he stopped communicating with her.

Morales's daughter, Olivia Isabella Morales, was born in November 2014.  Tragically, she suffered severe injuries during her delivery.  These injuries led to kidney failure which necessitated dialysis and a kidney transplant.  She also required a central line for medications, a gastrostomy tube for feedings, and a peritoneal catheter for dialysis.  Following Olivia's birth, Morales called Ovalles and told him that the child had suffered birth trauma and asked for his help.  He reportedly told her that he did not want to have anything to do with the child.

In March 2015, Morales filed a parentage action against Ovalles in Kern County Superior Court.  She requested sole legal and physical custody.  In his response, Ovalles did not seek legal custody, physical custody, or visitation.  He indicated that he was "not certain" if he was the child's father.  He reportedly requested DNA testing.[2]

During court-ordered mediation held the following month, the parties agreed that Morales would have sole legal and physical custody and that Ovalles would have no visitation.  The mediation agreement, which was signed by Ovalles as respondent, states that the "father shall have no visits with the child."  There is no indication in the record as to who prepared the mediation agreement, but, presumably, it was the mediator.

---

[2] In April 2015 Olivia reportedly underwent the requested DNA testing. There is no evidence in the record as to the results of this testing.

2

On August 20, 2015, the Kern County Superior Court filed its order granting sole legal and physical custody of Olivia to Morales. No visitation was granted to Ovalles. Ovalles was ordered to pay $1,788 in monthly child support, which he apparently paid through a wage garnishment. The computerized DissoMaster report used to calculate child support speaks in terms of "mother" and "father."

In September 2017, proceeds from the settlement of a lawsuit filed on behalf of Olivia were used to create the Olivia Morales Special Needs Trust (Trust). The Trust received a total of $921,383.93 in settlement proceeds. The Trust's funds were to be used to supplement the costs of equipment and services related to Olivia's disabilities. Respondent Westamerica Bank (Westamerica) was appointed to serve as trustee for the Trust.

The Trust provided that it would be terminated upon Olivia's death. The Trust's funds would be used to reimburse governmental agencies for amounts spent on Olivia's medical care, and to pay reasonable expenses incurred in finalizing the Trust's administration. The remaining balance was to be distributed to Olivia's heirs, who were to be determined according to the laws of intestate succession (§ 6400, et seq.). The determination of the heirs' respective shares would be made by the trustee and would be conclusive upon all such heirs and other persons interested in the Trust.

In January 2020, appellant contacted Ovalles to let him know that Olivia had been diagnosed with leukemia and had been hospitalized. Ovalles reportedly replied, "Okay." Olivia died in November 2020.

In March 2021, Westamerica filed a petition for approval of its final accounting, for termination of the Trust, and for instructions regarding final distribution of the Trust. The petition indicated that approximately $1 million in assets remained in the Trust as of December 31, 2020.

3

Westamerica noted that Morales claimed Ovalles was not entitled to inherit from the Trust. Citing to section 6452, Westamerica requested instructions from the court as to whether the Trust's residue should be distributed in equal shares to Morales and Ovalles. The following month, Westamerica filed a supplemental petition that included a copy of the August 2015 order in the Kern County family law proceeding.

In April 2021, Ovalles filed a request in the family law proceeding for an order terminating child support due to the death of the child. In his request, he referred to himself as "Respondent/Father." He asked to be reimbursed for support payments that were made following Olivia's death.

Westamerica's petition was heard on June 16, 2021. In its pre-grant order, the probate court had expressed its view that section 6452 did not apply and thus the Trust's residue should be distributed equally between Morales and Ovalles. Morales's attorney argued that section 6452 should apply because Ovalles had never acknowledged Olivia within the meaning of that provision. The court took the issue under submission.

On June 30, 2021, the probate court filed its order ruling that no evidence had been presented to show that section 6452 applied. The court acknowledged Morales's arguments that, despite paternity testing, paternity had never been established in family court; that Ovalles had expressed uncertainty as to whether he was Olivia's father; that Ovalles had never seen Olivia, did not want to see her, and was not present at her kidney transplant, bone marrow transplant, or funeral; and that, when Morales attempted to tell him she was establishing a trust and wanted to serve him with the paperwork, he reportedly declined to provide his address and stated he wanted nothing to do with it. The court, however, focused on the facts that Ovalles had participated in the earlier parentage proceeding by entering into

4

mediation and reaching an agreement regarding custody and visitation, and that he had paid child support. The court concluded these actions amounted to an acknowledgment of his paternity, finding the facts of the case "very similar" to those in *Estate of Griswold* (2001) 25 Cal.4th 904 (*Griswold*). The court instructed Westamerica to distribute the Trust's residue in equal shares to Morales and Ovalles.

On July 28, 2021, the probate court issued its order approving Westamerica's accounting, terminating the Trust, ordering payments from the Trust for trustee and attorney fees, as well as for a claim filed by the California Department of Health Care Services,[3] and instructing Westamerica to distribute the remaining balance of the Trust equally to Morales and Ovalles.

At a hearing held on February 1, 2022, the probate court declined to reconsider its ruling regarding section 6452 and denied Morales's motion for a new trial. Specifically, the court opined that in its previous ruling it had "discussed [the] *Griswold* case in detail[] and explained that a consent to pay child support amounted to the equivalent of an acknowledgement of parentage." (Italics added.) Referring to a typed entry of "Respondent/Father" on the approved form used by parties when seeking to terminate child support, the court also took note that Ovalles labeled himself as "father" in the Kern County family law proceedings in April 2021. The court concluded that it was bound by Supreme Court precedent. This appeal followed.[4]

---

[3] The Department of Health Care Services requested approximately $21,000 in reimbursement from the Trust for services provided to Olivia.

[4] Both Westamerica and the court noticed Ovalles at a Bakersfield address regarding the petition for approval of the final account and request for instructions regarding final distribution. The court and Westamerica also

5

## II. DISCUSSION

### A.  *Standard of Review*

The probate court's interpretation of a statute and its application to undisputed facts are subject to de novo review.  (*Sterling v. Taylor* (2007) 40 Cal.4th 757, 772; *Estate of Wilson* (2012) 211 Cal.App.4th 1284, 1290; *Harustak v. Wilkins* (2000) 84 Cal.App.4th 208, 212.)  When the facts are in conflict, the probate court's factual findings are reviewed for substantial evidence.  (*Estate of Joseph* (1998) 17 Cal.4th 203, 217.)  Here, the facts are not in dispute, and we will apply the de novo standard.

Indeed, we note that neither Westamerica nor Ovalles have filed a responsive brief in this appeal.  Accordingly, we "may decide the appeal on the record, the opening brief, and any oral argument by the appellant."  (Cal. Rules of Court, rule 8.220(a)(2).)  "Although some courts have treated the failure to file a respondent's brief as in effect a consent to a reversal, it has been said that the 'better rule . . . is to examine the record on the basis of appellant's brief and to reverse only if prejudicial error is found.' "  (*In re Bryce C.* (1995) 12 Cal.4th 226, 232–233.)  This approach gives full effect to the presumption that the judgment or order appealed from is correct and that, in order to prevail, the appellant has the burden to not only overcome that presumption but also demonstrate reversible error.  (See *Jameson v. Desta* (2018) 5 Cal.5th 594, 608–609.)  Using this approach, we conclude Morales has demonstrated reversible error.

---

mailed the court's June 2021 ruling to Ovalles at the Bakersfield address. And he was similarly served with Morales's new trial motion, related paperwork, and notice of hearing for that motion.  We are unaware of the source of this address or its validity but note that Ovalles has never appeared in these proceedings.

## B.    *Applicable Legal Principles*

Section 6452, subdivision (a) provides, in relevant part:  "A parent does not inherit from or through a child on the basis of the parent and child relationship if any of the following apply:  [¶]  (1) The parent's parental rights were terminated and the parent-child relationship was not judicially reestablished.  [¶]  (2) The parent did not acknowledge the child.  [¶]  (3) The parent left the child during the child's minority without an effort to provide for the child's support or without communication from the parent, for at least seven consecutive years that continued until the end of the child's minority, with the intent on the part of the parent to abandon the child."  If any of these three circumstances apply, the parent is deemed to have predeceased the child and the "intestate estate shall pass as otherwise required under [s]ection 6402."  (§ 6452, subd. (b).)

Here, we are concerned with the second circumstance under section 6542, subdivision (a)—namely—whether Ovalles failed to acknowledge Olivia.  On this point, *Griswold, supra,* 25 Cal.4th 904 is instructive.  In *Griswold,* the decedent had died intestate, survived by his wife who petitioned for administration and authority to administer the estate.  (*Id.* at p. 908.)  The decedent was the illegitimate son of a man who had admitted paternity in an Ohio court and had paid court-ordered child support.  (*Ibid.*)  The decedent and his biological father never met or communicated.  (*Id.* at pp. 908–909.)  The father eventually married and had two other children.  The decedent's half-siblings did not learn of the decedent's existence until after the decedent and their father had died.  (*Id.* at p. 909.)  An heir hunter, who had obtained an assignment of partial interest in the decedent's estate from the half-siblings, objected to a petition for final distribution filed by the decedent's wife and filed a petition to determine entitlement to distribution.

7

(*Id*. at p. 908.)  After the probate court denied the heir hunter's petition, the appellate court reversed, and the matter came before the Supreme Court. (*Id*. at p. 909.)

The Supreme Court considered whether the decedent's father had "acknowledged" his paternity within the meaning of section 6452.  (*Griswold, supra,* 25 Cal.4th at p. 910.)  It noted preliminarily that the term must refer to conduct other than "contributing to the child's support or care" or the acknowledgement requirement would be surplusage.  (*Id*. at p. 911.)  Next, since the word "acknowledge" is not defined in the Probate Code, the court resorted to the common dictionary meaning of the word: " '[T]o show by word or act that one has knowledge of and agrees to (a fact or truth) . . . [or] concede to be real or true . . . [or] admit.' " (*Id*. at p. 911.)  The court found that, despite the lack of contact between the decedent and his father, by appearing in a court proceeding and publicly " 'confess[ing]' " that the paternity allegation was true, the father had acknowledged the decedent. (*Ibid*.)  On that basis, the court ruled that the decedent's half-siblings were not barred from sharing in the estate by section 6452.  (*Id*. at pp. 919–920.)

In reaching this conclusion, the court considered a number of prior cases addressing the acknowledgment requirement in section 6452 and former analogous provisions.  For instance, in *Lozano v. Scalier* (1996) 51 Cal.App.4th 843 (*Lozano*), the natural father of a 10-month-old decedent needed to establish that he would be entitled to the child's property under the laws of intestate succession, including section 6452, in order to pursue a wrongful death action with respect to the deceased infant.  (*Griswold*, *supra,* 25 Cal.4th at p. 913, citing *Lozano*, at p. 848.)  We upheld the trial court's finding of acknowledgement under section 6452 "in light of evidence in the record that the plaintiff had signed as 'Father' on a medical form five months

8

before the child's birth and had repeatedly told family members and others that he was the child's father." (*Griswold,* at p. 913, citing *Lozano*, at p. 848.)

In *Estate of McNamara* (1919) 181 Cal. 82, the Supreme Court concluded that "a single unequivocal act could satisfy the acknowledgement requirement," under former Civil Code section 230.[5] (*Griswold*, at p. 914, citing *Estate of McNamara* at pp. 97–98.) In that case, the act of signing the birth certificate sufficed, the court opining that " 'it would be difficult to imagine' " a " 'more public acknowledgement.' " (*Id.* at pp. 914–915, quoting *Estate of McNamara* at pp. 97–98; see *Blythe v. Ayres* (1892) 96 Cal. 532, 577 [concluding the term "acknowledge" in former Civil Code section 230 had no technical meaning and employing the common meaning " 'to own or admit the knowledge of' "; see also *Estate of Gird* (1910) 157 Cal. 534, 542–543 [concluding in dictum that "a public avowal, made in the courts" would constitute a public acknowledgement under former Civil Code section 230].)

*Griswold* also considered two cases arising under former section 255.[6] In *Wong v. Young* (1947) 80 Cal.App.2d 391, "a man's admission of paternity

---

[5] Pursuant to former Civil Code section 230: " 'The father of an illegitimate child, by publicly acknowledging it as his own, receiving it as such, with the consent of his wife, if he is married, into his family, and otherwise treating it as if it were a legitimate child, thereby adopts it as such; and such child is thereupon deemed for all purposes legitimate from the time of its birth.' " (*Griswold*, *supra*, 25 Cal.4th at p. 914, fn. 4, quoting former Civ. Code, § 230.)

[6] Former section 255 provided, in pertinent part: " ' "Every illegitimate child, whether born or conceived but unborn, in the event of his subsequent birth, is an heir of his mother, and also of the person who, in writing, signed in the presence of a competent witness, acknowledges himself to be the father, and inherits his or her estate, in whole or in part, as the case may be, in the same manner as if he had been born in lawful wedlock." ' " (*Griswold*, *supra*, 25 Cal.4th at p. 915, fn. 5.)

9

in a verified pleading, made in an action seeking to have the man declared the father of the child and for child support, was found to have satisfied the public acknowledgement requirement" for both former section 255 and former Civil Code section 230. (*Griswold, supra,* 25 Cal.4th at p. 915.) Finally, in *Estate of Ginochio* (1974) 43 Cal.App.3d 412 (*Ginochio*), "a judicial determination of paternity following a vigorously contested hearing did not establish an acknowledgement sufficient to allow an illegitimate child to inherit under section 255 of the former Probate Code. [Citation.] Although the court noted that the decedent ultimately paid the child support ordered by the court, it emphasized the circumstance that the decedent was declared the child's father *against his will* and at no time did he admit he was the father, or sign any writing acknowledging publicly or privately such fact, or otherwise have contact with the child." (*Griswold*, at p. 919.) In reaching this conclusion, *Ginochio* opined that the "establishment of paternity [was] neither a statutory requisite to obtain inheritance rights under section 255, nor [could] it serve as a substitute for the statutory mandate which requires in clear and unequivocal terms that the father acknowledge 'himself to be the father.' " (*Ginochio*, at p. 416.)

On the other hand, *Lozano* concluded, and *Griswold* confirmed, that an acknowledgement under section 6452 need not be contained in a witnessed writing or made after the child was born so that the child is identified. (*Griswold, supra,* 25 Cal.4th at pp. 913–914, citing *Lozano*, at pp. 848–849.) And, as the appellate court in *Estate of Burden* (2007) 146 Cal.App.4th 1021, 1029 (*Burden*) later observed, *Griswold* "held that section 6452 should not be read to require that a father have personal contact with his out-of-wedlock child, make purchases for the child, receive the child into his home and other family, or treat the child as he does his other children." Instead, *Griswold*

"held the acknowledgement requirement was met because the stipulated facts showed that the decedent's father admitted paternity in a court proceeding. The court found significant the absence of evidence indicating the father did not confess knowingly and voluntarily, or that he later denied paternity or knowledge of the child to those who were aware of the circumstances." (*Burden,* at p. 1029.)

A final case relevant for our purposes is *Estate of Shellenbarger* (2008) 169 Cal.App.4th 894 (*Shellenbarger*). There, a married father abandoned his wife in New Mexico while she was pregnant with the decedent. (*Id.* at p. 897.) Several years later, he obtained a judgment of marital dissolution in Michigan and was ordered to pay child support. (*Ibid.*) It appears he may have paid some portion of the child support ordered. (*Id.* at p. 898.) After the child died, the mother argued that the father should not inherit under the laws of intestate succession because he had abandoned the decedent and had never visited or spoken to him. (*Id.* at p. 897.) The court noted that the father's bad behavior might have been relevant under section 6542 had the parents not been married. (*Id.* at pp. 898–899.) However, since the parties were married when the decedent was conceived and the father acknowledged paternity in the dissolution proceeding, he was entitled to inherit through his son. (*Ibid.*)

Section 6452 was repealed and reenacted in 2013—12 years after *Griswold* was decided—to address the inequities exposed in *Shellenbarger*. (Stats. 2013, ch. 39, § 2; Assem. Com. on Judiciary, Rep. on Assem. Bill No. 490 (2013-2014 Reg. Sess.) Apr. 2, 2013 [proposed amendment].)[7] The

---

[7] On our own motion, we take judicial notice of the legislative history of Assembly Bill No. 490 (2013–2014 Reg. Sess.). (Evid. Code, § 452, subd. (c); *Kern v. County of Imperial* (1990) 226 Cal.App.3d 391, 400, fn. 8 [appellate

reenacted statute no longer requires contribution to the child's support. It also eliminated any distinction between married and unmarried parents. (Assem. Com. on Judiciary, Rep. on Assem. Bill No. 490 (2013-2014 Reg. Sess.) as amended May 23, 2013 ["This bill . . . seeks to eliminate the distinction between married and unmarried parents and permit all parents to inherit from their children who die intestate," unless certain exceptions are present].)

Thus, as described above, any parent may inherit from or through their child unless parental rights are terminated; the parent failed to acknowledge the child; or the parent left the child during the child's minority without an effort to provide support *or* without communication for seven consecutive years, presumptive evidence of the parent's intent to abandon the child. (§ 6452.) The Legislature also added subdivision (b) to section 6452, providing that if a parent is disinherited pursuant to its terms, the parent is deemed to have predeceased the child and the "intestate estate shall pass as otherwise required under [s]ection 6402." (§ 6452, subd. (b).)

## C.   *Analysis*

In its June 2021 ruling, the probate court in the instant case expressly relied on *Griswold* in finding that Ovalles's "acknowledgment" occurred when he "participated in the Kern County proceedings, attending mediation and reaching an agreement regarding legal and physical custody, and paid his child support." In subsequently denying Morales's new trial motion, the court also noted that Ovalles had designated himself as "father" in his request to terminate child support after Olivia's death. And it commented

---

court may take judicial notice of legislative history materials on own motion].)

12

that "a consent to pay child support amounted to the equivalent of an acknowledgement of parentage."

In challenging the probate court's reasoning, Morales contends that "the acts listed by the trial court in support of its ruling arise from the paternity petition filed by the Appellant and are insufficient to establish an acknowledgment." She maintains that the probate court erred in its application of *Griswold,* arguing that "[i]n contrast to [the father] in the *Griswold* matter, Mr. Ovalles never admitted he was Olivia's father in the pending paternity case, and there was no judgment of paternity during her lifetime." We agree with Morales, finding the instant case more like *Ginochio* than *Griswold.*

First, *Griswold* held that something more than contributing to the minor's support was required to find an acknowledgement of paternity, and we see nothing in Assembly Bill No. 490 or its legislative history that would change this conclusion. To the contrary, the revised statute specifically provides that abandonment can occur through lack of communication even when support is provided. (§ 6452, subd. (a)(3).) And decades before these legislative changes, *Ginochio* held that an order to pay child support may be based on something less than a voluntary acknowledgment of paternity. "Where, as here, legislation has been judicially construed and a subsequent statute on the same or an analogous subject uses identical or substantially similar language, we may presume that the Legislature intended the same construction, unless a contrary intent clearly appears." (*Griswold, supra,* 25 Cal.4th at pp. 915–916, citing cases.)

*Ginochio* also established that mere participation in paternity proceedings is insufficient evidence of an acknowledgement of paternity. This leaves us with two bases upon which we could affirm the probate court's

13

order: Ovalles's participation in mediation during the family court process and his designation of himself as "Respondent/Father" in his April 2021 petition to discontinue child support. Even if this ambiguous reference provides some suggestion of an acknowledgement of fatherhood, it cannot be afforded much weight since it was made after Olivia died, and the relevant date for determining a decedent's heirs under intestate succession is the date of the decedent's death. (See § 7000.)

With respect to the mediation, Ovalles—having stated he was "uncertain" regarding Olivia's paternity and without any declaration of parentage—agreed that Morales should have sole legal and physical custody and declined visitation. While we agree that this is not the vigorous challenge to paternity that was present in *Ginochio*, it is also not the public "confession" of paternity which was conclusive in *Griswold*. Indeed, *Griswold* speaks in terms of a "single unequivocal act" as satisfying the acknowledgement requirement set forth in section 6452. (*Griswold, supra*, 25 Cal.4th at p. 914.) And *Ginochio* stated that former section 255 required a father to acknowledge himself as such in "clear and unequivocal terms." (*Ginochio, supra*, 43 Cal.App.3d at p. 416.) A mediation is, by its nature, an agreed-upon compromise. We can conceive of different reasons why Ovalles may have mediated this paternity dispute as he did, including, perhaps, a desire to avoid a formal declaration of paternity. Such mediation was certainly not an unequivocal confession that he was Olivia's father. Under these circumstances, where Ovalles has failed to acknowledge paternity for purposes of section 6452, he cannot inherit based upon the parent-child relationship.[8]

---

[8]Ovalles signed the mediation agreement as respondent. We do not deem the passing references to him as "father" in family court-generated

14

## III.  DISPOSITION

The order is reversed and remanded for further proceedings consistent with the conclusions set forth herein.  Morales is entitled to her costs on appeal.

---

documents such as the mediation agreement or the computer-generated DissoMaster support calculation to be persuasive evidence of his intent to acknowledge paternity.

 

_____
Humes, P.J.


WE CONCUR:


_____
Margulies, J.


_____
Banke, J.


_Westamerica Bank v. Morales_ A165492